## Bernstein *v.* Walsh, Appellant.

*Malicious prosecution—Wrongful arrest—Charge of court.*

In an action for malicious prosecution a judgment and verdict for plaintiff will be sustained, where it appears that the plaintiff was arrested in another state by the defendant personally at the point of a pistol, was detained in prison in that state for two weeks, was subsequently brought to Pennsylvania on a requisition, and at his trial was acquitted under binding instructions by the court on account of meagre and unreliable character of the evidence.

It is not error for a judge in his charge to the jury, to express his opinion on the facts, if done fairly.

Argued Oct. 17, 1906. Appeal, No. 135, Oct. T., 1906, by defendant, from judgment of C. P. No. 2, Phila. Co., March Term, 1904, No. 335, on verdict for plaintiff in case of Myer N. Bernstein v. John F. Walsh. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass for malicious prosecution. Before WILTBANK, J.

The court charged as follows:

[It is difficult to treat this case without reaching the conclusion that the defendant, Mr. Walsh, is under certain cir-

cumstances a dangerous citizen.] [3] It seems, however, that he may be quite free from any imputation, inasmuch as [I am obliged to leave to you the decision of the point in issue, and you may find that he has not committed any offense under the law, but I say it is difficult to believe that any man in his senses would so find.] [4] He was engaged in keeping rooms for pool games, as you have heard. He had several places, and among others he had one which has been more particularly mentioned here on Eighth street in this city, in which, at the time of the events that have been narrated to you, the plaintiff Bernstein was engaged. Bernstein had been with him about a week it would seem, although the ascertainment of the facts is entirely for you, and at the end of the week he left his employment. Mr. Walsh was on that day absent from the city, but he had left instructions with another clerk to so keep the place that he might get in when he arrived here, late at night or at any time during the evening. That clerk was Mr. Stevenson, and Mr. Stevenson was in the place up to quite a late hour, and he had, as he says, deposited in the safe moneys which had been collected in that room that day, and also which had been brought in from other rooms kept by the defendant in other parts of the town. When Walsh arrived he found that there was no money in the safe. It was under his instruction apparently that the safe had not been locked. Mr. Stevenson testified that he never locked it, he never adjusted the combination, although when he closed the door he turned the handle. The fact that the safe was not locked is not evidence that it had been opened by somebody after Stevenson had deposited moneys there. It was Stevenson himself who left it unlocked, according to the proofs adduced here on the part of the defendant.

Finding his money not there, Mr. Walsh proceeded to make an investigation, and he ascertained in some way that it would be likely that if he went on to New York he might find somebody there who had something to do with the matter. Whether he suspected Frank, or suspected Bernstein, or both of them, or those two and others, or one of those two and others, we cannot say, but he had a suspicion that they had some connection with the loss of that money, if there was any money lost. He went to a pool room in New York City on Sunday after-

noon, and he found Bernstein and Frank there playing pool. According to the story of Bernstein, corroborated by Frank, he pointed a pistol and said that they must come out, they were under arrest.   According to his story he had the pistol in his pocket, and he has stated to you the make and the caliber, but he did not draw it out, he simply made a motion as it were, by which an intelligent observer might conclude that there was a pistol somewhere about his person, and it evidently was Mr. Walsh's design, taking his narrative.at its full value, to avail himself of the importance of the possession of the pistol if those . gentlemen would not obey him otherwise, and it has been said that on the trial in the court of quarter sessions he stated that he did draw the pistol on them.   He denies that he drew the pistol on them under any circumstances, and also denies that in the · trial in the court of quarter sessions he said that he did.   Therefore you must determine which version of that part of the story is true.   However this may be, Bernstein and Frank did go out of that pool room with him.   He carried them off to some station, and preferred a charge against them, and they were taken from there, after spending a night, as I recall it, in the station house, to another station, and there they were given a hearing, and then they were committed to the tombs to await what have been called extradition papers.   Then they were brought on to this city under circumstances which you will recall, and which are not disputed, and then there was the trial.

The peculiar features of the prosecution of Mr. Walsh's claim against Mr. Bernstein were, as you will observe, his entry into that pool room with a concealed deadly weapon, the use of which, perhaps, he might have recourse to, and as to which whether he used it or not you are to determine, part of the proofs and quite a substantial part going to show that he did use it, and another part, and that you must give weight to, going to show that he did not.   He made what he calls the arrest of these people, as you observe, without a warrant, and thus interfered with the liberty of the citizens in a manner which was wholly without justification.   A citizen has no right to arrest another citizen in such a manner, and whether or not he had a pistol which aided him in consummating his arrest, the arrest itself was illegal.   Carrying them before the magistrate,

or police officer, or whoever it may have been, and so acting there as to lead to their commitment and imprisonment for that night, was without justification unless he there testified to circumstances which warranted the officers of the law in New York in committing these men. We have no evidence that he did or did not do this. He was there, and Mr. Bernstein has said that he directed that he, Bernstein, be searched, and Frank has said that he directed that he, Frank, be searched, but Mr. Walsh has said that he did not give those directions at all, and, of course, you will determine that issue of fact as you go along. [The imprisonment in New York presents features that must, of course, create surprise in the mind of anybody who is required to observe such conduct. How it could be that the officials there, under the circumstances shown, would show themselves right in putting Bernstein into prison as they did, it is difficult to see. No record has been produced which justifies the action, and the only salient fact we have is that it was due to the representations of Mr. Walsh of the alleged guilt of Bernstein.] [5] Then again, as a consequence, and here we come to a circumstance which is not disputed, after having been put into what they call the tombs, the municipal prison there, the plaintiff was kept waiting until extradition papers were procured here, and he was thereafter brought to Philadephia. [He was brought to Philadelphia under circumstances of peculiar degradation. He could not have been subjected to greater humiliation for any crime that he could have committed. He was handcuffed to his companion, taken from the tombs by various methods of conveyance, a trolley car, locomotion afoot, and so on, across on the ferryboat, put into a train, and brought on here, as I say, thus linked to another man, and bearing all the evidences necessary to the judgment of a sensible person that he had been guilty of some heinous crime. I am not aware, although it may be, that any other method of bringing over a murderer is in use by the authorities. The transportation of the plaintiff here under the circumstances I have indicated must necessarily cause astonishment in the mind of the hearer.] [6]

When he got here he was put in jail. Then he was called to the court of quarter sessions, and then it turned out that he had not been guilty of any offense at all. He was not

guilty of larceny, and was not guilty of receiving stolen goods, and his counsel very properly said to you that under the circumstances he could not have been found guilty on the evidence adduced. There was no evidence which would have justified that verdict. Having gone free, after the experience which has been narrated to you, but which, however, you are to ascertain by examining the proofs and using your judgment as to their significance after you have determined the credibility of the witnesses, he brings this action to recover from Mr. Walsh compensation for the prosecution. If this prosecution was without probable cause, then it was in a spirit of what the law calls malice, and if you find from the facts according to the contention of plaintiff's counsel, the plaintiff will be entitled to a verdict. Consider, therefore, was there probable cause? Have you before you any evidence whatever that the defendant Walsh, as a reasonable, prudent, law-abiding citizen, could justify his conduct by referring to any incident in the case? Had he any probable cause for directing that train of events which I have briefly alluded to? You will, of course, bear in mind that Bernstein had been in his employment. You will bear in mind that he missed the money, and apart from these circumstances you will find no affirmative evidence of plaintiff's having taken Walsh's money and run away with it, but is there any evidence to justify a suspicion that he had? If you find any evidence and therefrom deduce facts which justify a reasonable suspicion on the part of a prudent, law-abiding citizen, that Bernstein had stolen his money, then you will find that there was cause for his proceeding against the man. [But his proceeding, even under those circumstances, must have been according to law, and if you find that in availing himself of the process of the law upon what you regard as probable cause, he exceeded his rights under the law, then still there does remain a feature of abuse of his right as a citizen to cause the arrest of another, which, taken in connection with the ascertainment by a jury in the court of quarter sessions that the plaintiff was wholly innocent, would justify your disregarding what evidence you had or what conclusion you had reached of probable cause, because, apart from a question as to malice under the law in the absence of probable cause, here would appear an element of malice independent of

and beyond the influence and scope of the probable cause that you found.] [7] This may sound rather academic in putting it to you in this way, but I think you will understand the point as I desire to offer it to your consideration. If you find according to the contention of the defendant, then you must find a verdict for the defendant. If, on the other hand, you find according to the contention of the plaintiff under my instruction as to the significance of the proofs, then you will find a verdict for the plaintiff.

The measure of damages will be compensation of two kinds, assuming that you find a verdict for the plaintiff, actual compensation for his actual loss, and in addition to that compensation for the indignity, the outrage and offensive treatment, if any, which you find him to have been subjected to by the defendant. [Under the circumstances, should you find a verdict for the plaintiff, it would be right, if you find also that the circumstances justify it, that you should impose punitive damages upon the defendant, because not only would you find that the plaintiff had suffered actual loss, but you would find that the defendant had been guilty of circumstances of excess and of abuse of power as against this plaintiff, for which he should stand fined, as it were, or mulcted in damages.] [8]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (3–8) above instructions, quoting them.

*E. Spencer Miller*, for appellant.—Arrest of a fugitive from justice, is lawful, in advance of a requisition, on crime committed in another state: Com. v. Deacon, 10 Serg. & Rawle, 125 ; 2 Moore on Extradition, sec. 591, citing many cases.

For such arrest, the general principles of arrest apply, including, in case of felony, the action of a private citizen : State v. Anderson, 1 Hill (S. C.), 327, apparently approved in 2 Moore on Extradition, sec. 594. The law is similarly declared in 19 Cyc. of Law, 96.

*Henry M. Dubbs*, with him *Maxwell Stevenson*, for appellee, cited Burk v. Howley, 179 Pa. 539.

OPINION BY ORLADY, J., February 25, 1907:

The plaintiff recovered a verdict of $500 in this action of trespass for malicious prosecution, and the assignments of error upon which the appellant relies are directed at the charge of the court, which it is earnestly contended was unfair and inadequate, because it impressed a one-sided view of the case upon the jury, one unfavorable to the defendant, as well as cast having discredit on certain circumstances which tended in his favor.

Viewing the appellant's conduct in its most favorable light, he acted upon a state of facts, which affected with equal pertinence at least three persons and rose no higher than a mere suspicion; with this uncertain foundation he persisted in his original error by instituting and conducting a course of events without any possible warrant in law. The verdict was fully warranted by the appellant's own testimony. He did not resort to legal procedure to prosecute a suspected person, but made the law of his case to suit himself. He went outside the jurisdiction of our courts, and at the point of a revolver apprehended the plaintiff, and had him confined in a prison as a thief for about two weeks, until he secured formal requisition papers to have him transferred to Philadelphia for trial. When the cause was formally tried in the quarter sessions under an indictment charging the present plaintiff with larceny, the evidence was so meager and unreliable that the trial judge directed the jury to return a verdict of not guilty. The appellant's testimony in this record is so contradictory, and the facts he alleged in extenuation of his conduct, so unreliable, that the trial judge was clearly within the bounds of reasonable speech in saying to the jury: " It is difficult to treat this case without reaching the conclusion that this defendant, Mr. Wash, is under certain circumstances a dangerous citizen. . . . The plaintiff was brought to Philadelphia under circumstances of peculiar degradation. . . . He could not have been subjected to greater humiliation for any crime that he could have committed."

On the trial below the defendant's side of the case was presented by able counsel; and his point for instruction, which fairly exhibited his view of the law applicable to the facts, viz: " If the jury find that Walsh had reasonable ground of suspicion, supported by circumstances sufficient to warrant

an ordinarily prudent man in believing that Bernstein was guilty of the crime charged, they must find for the defendant," was affirmed by the court without any qualification. The plaintiff's contention was corroborated by other witnesses as to the main features of the case, and however disastrous it may be for the defendant there was no other side for consideration by the jury. The plaintiff's disregard of duty in leaving his employer without giving him a reasonable notice of his intention so to do, and which made his conduct at least suspicious, was doubtless the main cause for the light verdict he recovered.

As held in Mihalyik v. Klein, 22 Pa. Superior Ct. 193, the arrest and subsequent imprisonment of the plaintiff were an unwarranted abuse of legal process, and a trespass pure and simple for which this defendant is liable; and the court was fully justified in its definition of the measure of damages. It is well settled that it is not error for a judge in his charge to the jury, to express his opinion upon the facts, if done fairly; in some cases it might be his duty to do so, provided he does not give binding instructions or interfere with the province of the jury: Commonwealth v. Johnson, 133 Pa. 293; Commonwealth v. Warner, 13 Pa. Superior Ct. 461.

The assignments of error are overruled and the judgment is affirmed.