# COMMONWEALTH v. WOLF JOHNSON.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER
SESSIONS OF LACKAWANNA COUNTY.

Argued February 26, 1890—Decided March 17, 1890.

[To be reported.]

1. On the trial of an indictment for receiving stolen goods, knowing them to have been stolen, it is proper for the commonwealth to prove acts of receiving goods stolen from the same person other than those described in the indictment, in order to show guilty knowledge on the part of the defendant.

2. In prosecutions for larceny and receiving, several articles may be joined in one count, and proof as to one of them will sustain the indictment. If the others be not sufficiently described, it is not necessary to quash the indictment therefor, but they may be stricken out by amendment, or a nolle prosequi may be entered as to such goods.    · · · ·

3. When an indictment contains both good and bad counts, and the testimony has been confined to those that are good, but the verdict is a general one of guilty, the court may disregard the bad counts, treating their abandonment by the prosecuting officer as the equivalent of the entry of a nolle prosequi.

4. Such verdict will be supported and referred to the good counts, unless it appear that testimony was received which was admissible only under those that were bad. A defective description of an article, in a divisible count for larceny or receiving, is analogous in these respects to a bad count.

5. A charge to a jury must be considered and interpreted as a whole; if, so interpreted, it is a correct exposition of the law and an adequate and impartial presentation of the case, without any tendency to mislead or confuse the jury, it will be sustained, though portions of it, torn from their proper connection, may suggest error.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and Mc-COLLUM, JJ.

No. 174 January Term 1890, Sup. Ct.; court below, No. 150 October Term 1889, Q. S.

On October 8, 1889, the grand jury returned as a true bill an indictment against Wolf Johnson, in two counts. The first count charged the defendant with the larceny of " one heating stove of the value of thirty dollars, one cook stove of the value of twenty-five dollars, one lot of hardware of the

value of twenty dollars, one lot of granite ware of the value
of twenty dollars, and all of the value of ninety-five dollars,
of the goods and chattels, moneys and property of T. F.
Leonard." The second count charged the felonious receiving
of "the goods and chattels, moneys and property aforesaid,"
then lately feloniously stolen, taken and carried away by some
person unknown, the defendant knowing that they had been
so stolen, etc.

On December 16, 1889, when the case was called for trial,
the defendant moved the court to quash the indictment, for
the reason that there was no sufficient specification of the goods
and chattels alleged to have been stolen.

By the court: I think this question can be properly raised
at another juncture of the case; motion overruled; exception.[1]

Thereupon the defendant, being arraigned, pleaded not
guilty, and a jury was empaneled. The substance of the tes-
timony is fully stated in the charge to the jury, as follows:

[From the manner in which this case has been watched, and
from the manner in which it has been commented upon in the
journals of this city, it is easy to perceive at a glance that it is
a case which attracts more than ordinary or passing attention.] [2]
[The charge alleged in this indictment is a serious one. It, to
a certain extent, we may say, affects, if we may be pardoned
the term, the business morals of this community. Incidentally,
it has been shown in connection with other cases which have
attracted attention in this court, that a systematic plundering
of employers by employees has been going on, and that certain
persons are engaged in disposing of that plunder, and among
others the defendant in this case.] [3]

The defendant in this case, Wolf Johnson, is charged in the
indictment which I hold, with the crime of larceny; the sec-
ond count in the indictment charges him with the crime of
receiving. Larceny is where a person knowingly and felo-
niously takes the property of another and appropriates it to his
own use.' Receiving is where a person feloniously receives the
property of another, knowing it to have been stolen. You will
bear in mind these principles as we go along.

This indictment charges Wolf Johnson with having stolen
one heating stove and one cooking stove, the property of T. F.

Charge of Court below.

Leonard, or the property of T. F. Leonard as a member of the firm of Leonard Brothers. . . . .

The commonwealth alleges and proves this by the testimony of John C. Donnolly, that, sometime shortly after Thanksgiving in 1886, Donnolly being at that time in the employ of Leonard Brothers, of this city, he went to the place of business of Wolf Johnson, on Penn Avenue in this city, and that Johnson requested him to bring some articles to his place. It is unnecessary for me, I will say in passing, to enter into the details of all these articles, but he requested him to bring some articles, in which the firm of Leonard Brothers were dealing, to his place. He brought them there, and Johnson paid him money for them, which was less than the price at which they were retailed by that firm. His testimony, you will recollect, goes on to show that Johnson told him to take the money and put it in his pocket; that all the clerks around town were doing it, and he might just as well do it. He claims that that was his first induction into crime, and that he was induced to commit the crime by reason of the solicitation of Johnson. He further testifies that he was subsequently requested by Johnson to bring him a stove; that he did bring him a stove, I think this was a range, and this was in the winter of 1887, after Thanksgiving. That two months afterwards he was also solicited to bring him another stove, which he testifies that he did. He further testifies that he brought Johnson, at his solicitation, a Garland heater or stove, in the spring of 1888. He testifies that the prices of these stoves were, respectively, $22, $30, and $32, being the prices at which Leonard Brothers were selling these stoves, and that he received for the $32 stove the sum of $10, and for the other stoves the sum of $12 each. He testifies that, also at the solicitation of Johnson, he brought him a wash-boiler, valued at $1.50, and other articles of hollow ware, and for these he gave him the sum of $1. Now, with reference to these articles we say to you, gentlemen of the jury, as we have already taken occasion to say in our rulings upon the evidence adduced in this case, that you must eliminate from your consideration any articles which the defendant is charged to have stolen, or to be the receiver of as being stolen, except these stoves, or at least two of them, and these would be the Garland heater, and the second stove which was

### Charge of Court below.

alleged to have been delivered two months after Thanksgiving, in the winter of 1887 ; because for the legal reason that these articles of hardware enumerated in this indictment, and they are enumerated in globo, are without the pale of the statute of limitations, and hence we could not sustain a conviction upon any of these articles. But, we allowed testimony with reference to them to be offered for the purpose of showing if there was any guilty knowledge on the part of Wolf Johnson in receiving these articles, if he received them. This, in the main, constitutes the testimony upon which the commonwealth relies for a conviction. We will take occasion later on to call your attention to other details of the testimony, which we think we can more properly do, and do it in a more orderly manner than at this juncture. . . . .

The main question raised by the defendant, in addition to his denial of any connection with the witness John C. Donnolly and that he ever had any dealings with him, and the first time he ever met him was last summer when he purchased from him a watermelon, is the want of corroboration of Donnolly's testimony. Then comes the legal argument of the defence that, there being no corroboration of John C. Donnolly's testimony, he comes before the court and jury as a self-confessed thief, and that there can be no conviction. . . . . . However, the commonwealth does not in this case rely solely upon the testimony of John C. Donnolly for a conviction, but she alleges that there is corroboration, and abundance of corroboration to warrant this jury in finding a verdict of guilty in manner and form against this defendant as he stands indicted. [In one instance, they rely upon the testimony of Louis Epstein, who testifies that this Garland stove, mentioned in the testimony, was brought to Wolf Johnson's house by Donnolly, the main witness for the prosecution, and the employee of Leonard Brothers. Epstein testifies that this stove was carried up-stairs by one Simon Denier, and the witness Donnolly. He testifies that he saw this stove delivered two years ago.] [4] There is some slight conflict in the testimony as to the time mentioned by him as two years ago, whether that means two years prior to the arrest in this case, when he first testified in September last, or whether it is two years from the date of giving his testimony. It will be for you, gentlemen of the jury,

Charge of Court below.

to reconcile that. If you find, as far as this Garland stove is concerned, that it was two years last September, and the indictment in this case not having been found until October 8, 1889, then we say to you as a matter of law that you are bound to exclude that from your consideration. . . . .

[It is also urged and has been argued very strenuously by the commonwealth before you, and it is their theory, I believe, that at the time, or about the time these proceedings were instituted, certain stoves were broken up in the barn of Wolf Johnson. If that were so, and this stove was not discovered upon the premises, we should say it was a suspicious circumstance to say the least. However, Mr. Johnson denies that at that time he was in the possession of the barn, and testifies that it was leased to one Simon Denier who is not here and who is reported, I believe from the testimony, to be in Canada;][5] that he was a dealer in rags, old iron, old stoves, bones, and such things; that he used that barn as a storehouse for that purpose, and that the iron that was broken up was an old stove. . . . .

[Now, it is also alleged by the commonwealth, and it is admittedly true from the testimony of the defence, that a stove corresponding with the stoves sold by Leonard Brothers, and which they uncontradictedly testify that they were the sole agents and sellers of in the city of Scranton and the county of Lackawanna, was sold by this defendant to one Nathan Reubens; that subsequently to the institution of proceedings in this case, this stove was found in the possession of Reubens, and identified as a New King Heater, No. 80. The sizes of the plates on top were given, the details of which are unnecessary. Nathan Reubens is called to the witness stand and testifies that he purchased that stove from Wolf Johnson. This, to a degree, is corroborative of the testimony of the witness Donnolly, who testifies to having delivered to Johnson a stove of that description, and that he had not made any recompense to Leonard Brothers for it, and had received the price that Johnson had paid him for it.][6] In answer to that, Johnson testifies that he purchased the stove from a tailor named Marx; that he sold that stove to Nathan Reubens, and that Reubens became dissatisfied with it, returned the stove to him, and he gave him four dollars and another stove in exchange, which

Charge of Court below.

stove he had purchased from Mrs. Bertha Posner; that the stove he purchased from Mrs. Posner was the stove that was found at the time of the investigation, and is now in the possession of Nathan Reubens. In this he is corroborated by the testimony of Mrs. Posner, who swears that she is engaged in the sale of second-hand clothing, stoves, furniture, and other articles of various kinds, and that she sold this stove to Johnson, and that she was present yesterday, or the day before, on the premises, and identified it as the stove which she sold to him.

[Another fact relied upon by the commonwealth, as corroborative testimony of Donnolly, is the fact that subsequent to the arrest of this defendant he attempted to bribe the officer who had the management and the investigation of this case in hand. To that end, Officer Simpson is called to the witness stand, and he swears that about the 19th of October of this year he was summoned to the house of Wolf Johnson; that he went there, and while there he was presented by Mrs. Johnson with a twenty-dollar gold piece, and two ten-dollar gold pieces, and was told to do what he could for them. He alleges that subsequently he received a letter, or what purported to be a letter from Mr. Johnson, and when upon investigation, after he had handed it to the mayor, and before he had opened it, it being opened by the mayor in the presence of the chief of police and himself, that it contained a fifty-dollar bill. Now, it is not our purpose to prejudice this case one way or the other by any comments which we may make upon this portion of the testimony, or upon any other portion, or any other branch of the testimony, but we do say, and we say it with all the emphasis of which we are capable, that conduct of this kind is reprehensible in an eminent degree. If the ends of justice cannot be subserved without the bribing of officers who have the conduct and management of cases of this kind in their hands; I say, if the ends of public justice cannot be subserved except by perpetrating a double crime, better they were never instituted. Yet, we say to you that although we make this criticism in passing upon this testimony, yet it does not discredit the testimony.] [7]

In reply to this, Johnson, his wife and Betsy Denier, testify that the officer came to their place and stated that as the office

Charge of Court below.

of the mayor and chief of police had instituted these proceedings, they had a right to settle them.   Well, now we want it understood here and now that not only the court as it is now constituted, but each member of it, and I speak for them all, want it understood that when criminal proceedings are instituted they are to be settled in this court, and nowhere else; that wants to be understood, and understood very emphatically and distinctly.   They testify that he came there and reported that as they had instituted the proceedings, they had a right to settle them.   You will recollect Miss Denier's testimony that she went to the kitchen; that there was a window open, there was a curtain between her and where the officer sat, he being seated at a table near the window with Mrs. Johnson; she testifies to his asking for the money and receiving the twenty-dollar gold piece and the two ten-dollar gold pieces; Johnson, Mrs. Johnson and she each testify to that.

[In corroboration of the testimony of Mr. Simpson, the officer, is produced the testimony of Mr. Smith, a brother officer. I might say before I reach that testimony, that Miss Denier states that she left the kitchen before Officer Simpson left the dining-room, where this transaction is alleged to have taken place, and that she went out by the rear door.   Officer Smith swears in corroboration of the testimony of Officer Simpson that he was stationed within a few feet of the rear door of this house, or the kitchen door, and that he remained there forty minutes; that he was there all the time that Officer Simpson was inside, and that while there no person had either egress or ingress to the kitchen, or to any rear portion of the house.] [8]

[Before passing from this branch of the case we might say, that if this money were tendered by the defendant as stated by the officer to him as a bribe, it would be almost conclusive evidence of guilt.] [9]   If, as explained by the defendant, it was given to the officer under the pretence stated by the defendant, namely, that it was given for the purpose of saving him from getting into court, and saving him the expense of hiring lawyers, and perhaps the payment of costs, and that it was done through fear that his license would be revoked by the court; then, we say to you, it would not be any evidence of guilt.   It would, rather, show a fear on his part of losing his license, and being mulcted in costs for the payment of witness

Charge of Court below.

fees.    But these are all suspicious circumstances, gentlemen of the jury, and must be weighed by you, and by you alone. It is incumbent upon us to comment upon them simply in passing, calling your attention to them and leaving the determination of the facts to you.

[It is also alleged on the part of the commonwealth that this defendant, subsequent to the time the warrant was issued for his arrest by Alderman Fuller, went to Alderman Fuller's office, placed a ten-dollar bill upon the table, and stated that he wanted his advice.    Now, if you find from the evidence that the defendant was aware of the fact that a warrant had been issued for him, that it had been issued by this particular magistrate, and he went there and offered him a bribe, we would say that it was a corroboration, to a certain extent, of Officer Simpson's testimony, and that it was an attempt to bribe, perhaps, a magistrate; this, if true, might be a suspicious circumstance.] [10] . . . . .

[This is a serious case, gentlemen of the jury; it is a case which endangers, if the facts are as alleged on the part of the commonwealth, the business interests of this city.    Where men engage in business and rely implicitly and confidently, as they should, upon the honesty and integrity of their employees, if such conduct has been going on as alleged in this case, then it is time that the business people of this city arise as one man and array themselves against any such practice.    I do not intimate by this remark, nor do I wish to be understood by you as intimating any guilt upon the part of this defendant, but I say if such practices as these are going on it is time the business men arose as one man and arrayed themselves against any such practices.] [11]    Again, let this not go to the prejudice of this defendant.    The defendant denies it; the witness Donnolly positively asserts it; that he for years has been a thief, that he has been stealing the goods and chattels of the firm of Leonard Brothers and disposing of some of them to this defendant; that he was induced to do this at the solicitation of the defendant, and that after he had furnished him certain articles he asked him for others, and when refused, figuratively. speaking, he held the whip over him, held the lash over him, and said if he did not do it he would peach upon him and tell Leonard Brothers about it; and in this manner he became ter-

rorized and furnished him with whatever he requested him to
furnish. . . . .

The jury returned a verdict of guilty as to the second count,
but not guilty as to the first count of the indictment. The
defendant was then sentenced to pay a fine of $100, to undergo
imprisonment in the penitentiary for the term of one year and
nine months, and to restore the stolen property, etc.; where-
upon the defendant took this appeal, assigning for error:

1. The refusal to quash the indictment.[1]

2–11. The parts of the charge embraced in [ ] [2 to 11]

*Mr. John P. Kelly* and *Mr. E. C. Newcomb* (with them *Mr.
O'Brien*), for the appellant:

1. The indictment should have been quashed, as it was fla-
grantly defective in not specifying with any certainty the num-
ber and kind of goods stolen. There should be such certainty
of description as will apprise the defendant of the exact offence
for which he is to be tried; make it appear judicially that the
goods could have been the subject of larceny; enable the jury
to decide whether the chattels proved to have been stolen are
the very same as those upon which the indictment was founded;
and enable the defendant to plead his acquittal or conviction
in bar of a subsequent prosecution: Whart. Cr. Pl. and Pr.,
§§ 206 to 208; Whart. Cr. Ev., § 121; 2 Russell on Crimes,
*313; Commonwealth v. Gillespie, 7 S. & R. 469; People v.
Jackson, 8 Barb. 637; State v. Edson, 10 La. Ann. 229. As
the grand jury cannot find less than the whole of any one count,
this indictment may have been found upon proof of the larceny
or receiving of articles entirely different from those proven on
the trial: 1 Chitty's Cr. Law, *296; Commonwealth v. Keenan,
67 Pa. 203.

2. The direction of the minds of the jury to the comments
of the newspapers, without cautioning them against influence
from that source, was erroneous. It might readily have led
the jury to believe that such newspaper comment was proper
matter for their consideration. It offended against the princi-
ple declared in Commonwealth v. Landis, 12 Phila. 576. The
part of the charge set out in the third specification of error,
referring to what had been shown incidentally in connection

Arguments.

with other cases, was highly prejudicial to the defendant, because it assumed facts not in evidence nor warranted by the record; and the fair inference to be drawn by the jury was that the defendant had been shown in the other cases to be engaged in disposing of the goods systematically plundered from employers: Stouffer v. Latshaw, 2 W. 165; Sartwell v. Wilcox, 20 Pa. 117; Snyder v. Wilt, 15 Pa. 59; Goersen v. Commonwealth, 99 Pa. 388; Del. etc. Canal Co. v. Torrey, 33 Pa. 143; Stokes v. Miller, 10 W. N. 241; Haines v. Stouffer, 10 Pa. 363.

3. The instruction embraced in the fourth specification, assumed the whole question of the identity of the stove mentioned by Epstein, although as he failed to describe the stove, and fixed a date earlier than the earliest transaction in stoves mentioned by Donnolly, a question of identity was raised which was properly for the jury: Stokes v. Miller, 10 W. N. 241; Goersen v. Commonwealth, 99 Pa. 388; Wenrich v. Heffner, 38 Pa. 207; Musselman v. Railroad Co., 2 W. N. 105; Bovard v. Christy, 14 Pa. 267; Snyder v. Wilt, 15 Pa. 59. It even withdrew Epstein's credibility from the jury: Madara v. Eversole, 62 Pa. 160. The part of the charge complained of in the fifth specification gave undue prominence to the commonwealth's theory, although it was negatived by her own witness, Siegel: Goersen v. Commonwealth, supra. Under specification six, we claim that it was not the province of the court to tell the jury what was corroboration of Donnolly, but that was a question for the jury, as the testimony the court alluded to would be no corroboration at all, if the testimony for the defendant was believed: Bergner v. Thompson, 74 Pa. 168.

4. In the portions of the charge referred to in the eighth, ninth and tenth specifications, the court invaded the province of the jury, and misled them to the prejudice of the defendant. The facts should have been submitted to the jury with proper instructions. In the seventh and eleventh assignments of error we have specified language that was intemperate and far removed from the dignity and impartiality that should mark the judicial character. It was such as has frequently been condemned by this court: Coxe v. Deringer, 82 Pa. 258; Linn v. Commonwealth, 96 Pa. 288. Moreover, that set out in the eleventh specification not only was raising a judicial hue and cry against the accused, rendering a calm and impartial ver-

dict well nigh impossible, but it was utterly without foundation in the way of evidence, and, thus tending to mislead and improperly prejudice the jury against the accused, was erroneous : Stokes v. Miller, 10 W. N. 241 ; Linn v. Commonwealth, 96 Pa. 285.

*Mr. Everett Warren* and *Mr. H. M. Edwards*, District Attorney, for the appellee :

1. The indictment was in a sufficiently precise form : Commonwealth v. Ramsey, 1 Brewst. 422 ; Whart. Cr. Law, § 358 ; Williams v. Commonwealth, 91 Pa. 502.   The defendant could have applied for a bill of particulars, and he practically had the benefit of one, as the court confined the trial to the two stoves, of which there was a perfect specification, testimony as to the other articles being admitted only to show guilty knowledge, etc., which was proper : Kilrow v. Commonwealth, 89 Pa. 480. Proof as to one of several articles included in an indictment is enough to warrant a conviction : Whart. Cr. Ev., § 132 ; Commonwealth v. Eastman, 2 Gray 76 ; Commonwealth v. Williams, 2 Cush. 583.

2. It is manifestly unfair to detach a few words from the body of a charge and give them a meaning different from their fair construction when taken in connection with the rest of the charge : Alexander v. Commonwealth, 105 Pa. 1.   The charge, taken as a whole, was fair and favorable to the accused.   It presented his weak defence in as strong a light as he could ask, and left the jury free to believe or disbelieve his story.   Nor did the court assume facts not sustained by the testimony.   The comments in the charge were all grounded upon facts proven in the case.

OPINION, MR. JUSTICE McCOLLUM :

In the first count of the indictment the defendant was charged with the larceny of " one heating stove of the value of thirty dollars, one cook stove of the value of twenty-five dollars, one lot of hardware of the value of twenty dollars, one lot of granite-ware of the value of twenty dollars, and all of the value of ninety-five dollars ; " and in the second count with receiving these articles with knowledge that they were stolen. A motion to quash the indictment, on the ground of an insuffi-

cient specification of the stolen goods, was overruled, a plea of "not guilty" was entered by the defendant, and a trial was had, which resulted in his conviction and sentence on the second count. It distinctly appears in the record that the material question for the jury was whether the defendant received the stoves mentioned in the indictment, knowing that they had been stolen. No attempt was made to convict him of receiving other stolen goods, and no evidence was offered for that purpose.

It was proper for the commonwealth to prove other acts of receiving to show guilty knowledge. The evidence of these acts was independent of, and unaffected by, any description in the indictment of stolen goods, and the statute of limitations was a bar to any prosecution founded upon them. The charge of the larceny and receiving of a lot of hardware and a lot of granite-ware, was treated as surplusage, and had no agency in the conviction. It was voluntarily abandoned by the commonwealth, and its presence in the indictment was not prejudicial to the defendant in any degree. Where, on an indictment, which contains good counts and bad counts, the verdict is general, the court may disregard the bad counts, treating their abandonment by the prosecuting officer as virtually, or the equivalent of a nolle prosequi: Whart. Crim. Pl. & Pr., 9th ed., § 907.

In prosecutions for larceny and receiving, several articles may be joined in a count, and the proof of one of them will sustain the indictment. A nolle prosequi may be entered on a portion of a divisible count, even after verdict. If several articles are embraced in a count for larceny, and one of them is sufficiently described and the others are not, it is not necessary to quash the indictment. In such case, it is proper to amend by striking out the articles defectively specified, or to enter a nolle prosequi as to them. Indeed, to quash an indictment on such ground might effectually defeat justice, as where the statute of limitations would be an answer to a new bill for the larceny of the article which was adequately described in the quashed indictment. A defective description of an article in a divisible count for larceny is analogous to a bad count in an indictment. In the latter case a general verdict will be supported, and referred to the good counts unless it appear

Opinion of the Court.

that evidence was received which was admissible only under the bad counts. We cannot find in the record any evidence which could have been excluded, if the averments respecting the hardware and the granite-ware had been stricken out. The testimony in the cause, and the charge of the learned judge, which is before us on exception by the defendant, leave no room for an inference that the alleged defective averments had any part or influence in the trial of this issue. If there was any error in refusing to quash the 'indictment, it was rendered harmless by the subsequent proceedings in the cause, and for such an error we do not reverse a judgment.

The several specifications of error, based on extracts from the charge, do not require separate consideration. A charge must be considered and interpreted as a whole. If so interpreted, it is a correct exposition of the law, and an adequate and impartial presentation of the case, it will be sustained, although portions of it, torn from their proper connection, may suggest error. In this case we fail to discover any bias in the charge, or anything to confuse or mislead the jury. The law applicable to the issue was clearly and correctly stated, and the claims of the commonwealth and the accused, together with the evidence sustaining and controverting them, were fairly presented. All the specifications of error are dismissed, and

The judgment is affirmed; and it is further ordered that Wolf Johnson, the appellant, be remanded, to the end that the sentence of the court below be executed, and that he be confined, according to said sentence, for the residue of the term which had not expired on the date of suspension of sentence ; and that the record be remitted, that the sentence and this order be carried into effect.