406 A.2d 1102

**COMMONWEALTH of Pennsylvania**

v.

**Stephen KWATKOSKI, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided June 29, 1979.

Malcolm M. Limongelli, First Assistant Public Defender, Norristown, for appellant.

Patrick J. Toole, Jr., District Attorney, for Commonwealth, appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

PRICE, Judge:

Following a jury trial, appellant was convicted on May 19, 1976, of tampering with a witness,[1] and criminal conspiracy.[2] Post-trial motions were denied, and appellant was sentenced to four (4) years probation and ordered to pay the costs of prosecution. Appellant now alleges that the court below erred in several respects. Finding no merit in these contentions, we affirm the judgment of sentence.

Appellant first argues that the evidence was insufficient to sustain a conviction for either tampering with a witness or criminal conspiracy. It is well settled that when confronted with a question involving the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict winner. *Commonwealth v. Mangini*, 478 Pa. 147, 386 A.2d 482 (1978); *Commonwealth v. Warren*, 475 Pa. 31, 379 A.2d 561 (1977). Reviewing the evidence in this manner, the following facts were adduced at trial.

On June 6, 1975, a subpoena was issued to Mr. and Mrs. Michael Shemar ordering them to appear for a hearing concerning allegedly illegal ballots entered for a Mr. Bruno Petrillo in a councilman's election in the 11th Ward, Borough of Norristown.[3] Approximately one hour after the subpoena

---

1. 18 Pa.C.S. § 4907(a)(1). The guilty verdict was predicated on Information No. 5138.25, concerning tampering with one Michael Shemar. Appellant was acquitted on Information No. 5138.24, alleging an identical charge with respect to one Ann Shemar.

2. 18 Pa.C.S. § 903(a)(1). Appellant was acquitted of conspiracy under 18 Pa.C.S. § 903(a)(2).

3. On April 7, 1976, Mr. Petrillo pleaded guilty to twenty-three (23) informations charging him with election irregularities during absentee balloting in Norristown prior to the primary election of May, 1975. Mr. Petrillo was at the time an incumbent councilman seeking re-election. In *Commonwealth v. Petrillo*, 255 Pa.Super. 225, 386 A.2d 590 (1978), we concluded that the lower court erred in accepting the plea without informing Mr. Petrillo that he risked disenfranchisement as a result of entering a plea of guilty. The matter was consequently remanded by this court so as to allow Mr. Petrillo an opportunity to withdraw the plea.

had been delivered to the Shemar's residence, appellant presented himself at their front door. Michael Shemar answered the door and admitted appellant, although neither Mr. Shemar nor his wife knew him personally. Upon entering appellant asked Mrs. Shemar if he had been issued a subpoena. The latter responded affirmatively and queried appellant as to how he acquired this information. Appellant merely replied that, "You don't have to worry about it." During the ensuing two hour discussion with both Mr. and Mrs. Shemar, appellant stated that the subpoena would be taken care of, and Mr. Shemar would not have to appear in court; a possibility which concerned Mrs. Shemar because of her husband's recent poor health. Nevertheless, appellant continued, in the event that the Shemars were forced to appear in court, they should "fabricate" a story concerning the day in question; telling "them" that they were away at the time, at an in-laws' anniversary or the like.[4] Mrs. Shemar retorted that she couldn't lie because she was working that day. Both Mr. and Mrs. Shemar acknowledged being acquainted with Mr. Petrillo, but appellant answered in the negative when asked if Mr. Petrillo had sent him to the Shemars.

■ In determining whether the evidence produced is sufficient to support a conviction, the test to be applied is whether, accepting as true all evidence and all reasonable inferences therefrom on which if believed the fact finder could have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime charged. *Commonwealth v. Gallo*, 473 Pa. 186, 373 A.2d 1109 (1977); *Commonwealth v. Vogel*, 468 Pa. 438, 364 A.2d 274 (1976); *Commonwealth v. Deeters*, 255 Pa.Super. 343, 386 A.2d 1034 (1978). Nevertheless, guilt must be

---

**4.** The precise nature of the hearing to which the Shemars were subpoenaed is never made clear in the record. From Mr. Shemar's testimony, it appears that Mr. Petrillo had visited the Shemars on the night of May 20, 1975; the evening of the primary election. Mrs. Shemar implied that appellant wished to have it appear that the Shemars were absent that evening so as not to confirm Mr. Petrillo's visit.

proved and not conjectured; the reasonable inference of guilt must be based on facts and conditions proved, not solely on suspicion or surmise. *Commonwealth v. Holguin*, 254 Pa.Super. 295, 385 A.2d 1346 (1978); *Commonwealth v. Navarro*, 251 Pa.Super. 125, 380 A.2d 409 (1977). Instantly, we have little difficulty in deciding that sufficient evidence was adduced to find appellant guilty of tampering with a witness. The offense is defined in pertinent part as follows:

"A person commits an offense if, believing that an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a witness or informant to:

(1) testify or inform falsely; . . . ."

18 Pa.C.S. § 4907(a).

Appellant appeared to have knowledge of the subpoena and its subject matter prior to engaging Mr. Shemar in conversation. If he did not, he certainly acquired such knowledge in the course of his conversation with the Shemars. Accepting the Shemars' version of the conversation, appellant attempted to induce the Shemars to fabricate a story as to their whereabouts on the day in question. When appellant suggested that the Shemars inform "them" that they were not home when Mr. Petrillo allegedly visited on election night, "them" may reasonably be inferred to mean those presiding at the hearing.[5] Appellant's statements and the reasonable inferences deducible therefrom confirm his guilt beyond a reasonable doubt.

With respect to the conspiracy charges, the evidence presents a closer question, but we nonetheless believe it sufficient to sustain the conviction. Appellant was convicted under the count which recited as follows:

"Stephen Kwatkoski with the intent of promoting or facilitating the commission of the crime of False Swearing and Tampering with Witnesses (Crimes Code) and False Statement (Election Code), unlawfully and feloniously did

---

5. Appellant testified that "them" referred only to the neighbors of the Shemars, who had allegedly been harassing the Shemars with respect to the incident.

agree with Bruno Petrillo and divers other persons that they or one or more of them would engage in conduct which would constitute such crime(s) or an attempt or solicitation to commit such crime(s), and did an overt act in pursuance thereof."

The heart of every conspiracy is a common understanding, regardless of how it came into being. *Commonwealth v. Holguin, supra; Commonwealth v. Henderson*, 249 Pa.Super. 472, 378 A.2d 393 (1977); *Commonwealth v. Minnich*, 236 Pa.Super. 285, 344 A.2d 525 (1975). As has often been noted, however, the crime is by its very nature frequently not susceptible of proof, save by circumstantial evidence, and thus, the agreement may be inferred from the acts and conduct of the parties. *In Interest of Gonzalez*, 255 Pa.Super. 217, 386 A.2d 586 (1978); *Commonwealth v. Adams*, 254 Pa.Super. 62, 385 A.2d 525 (1978); *Commonwealth v. Kidd*, 251 Pa.Super. 140, 380 A.2d 416 (1977). "A conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: [citation omitted]." *Commonwealth v. Horvath*, 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958).

The testimony of the Shemars indicated that appellant was aware that the subpoena was issued in connection with the action pending against Mr. Petrillo. Mrs. Shemar testified that appellant stated, "They're just jealous of us. That's why they're doing it to us." N.T. 98. One could reasonably infer from this statement that the "us" referred to is appellant and Mr. Petrillo. Further, when appellant responded to Mrs. Shemar's question as to why Mr. Petrillo was not calling personally, he offered, "He can't call you." N.T. 99.

As to Mr. Petrillo's participation, Michael Shemar testified that Mr. Petrillo requested him to write a letter indicating that the Shemars could not testify at the hearing. This request, occurring at the same time as appellant's attempt to influence the Shemars, indicates the existence of a concert-

ed, deliberate design. It would be unreasonable to assume that such actions so closely connected by time and similarity of objectives, executed by two individuals known to each other, were simply isolated incidents. Consequently, the evidence was sufficient to sustain the conviction.

■ Appellant next argues that because the verdicts were logically inconsistent, a re-trial is necessary. It is, in fact, difficult to reconcile the verdicts. The jury convicted appellant of tampering with Mr. Shemar, yet acquitted him of tampering with Mrs. Shemar, notwithstanding the fact that appellant conversed with both Shemars, and his remarks concerning fabrication of testimony were evidently directed to each of them. Nevertheless, it is well settled that logical consistency is not required in criminal verdicts provided there is sufficient evidence to support the verdict rendered. *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975); *Commonwealth v. Love*, 248 Pa.Super. 387, 375 A.2d 151 (1977); *Commonwealth v. Warlow*, 246 Pa.Super. 224, 369 A.2d 1293 (1977). Inconsistent verdicts do not necessarily indicate a gullible or irrational jury, but may rather evidence its desire to mitigate a harsh result when it concludes that sufficient punishment has been imposed on prior counts. Because we have already concluded that sufficient evidence was adduced to sustain the conviction, the fact that the verdicts were arguably inconsistent is immaterial.

Appellant next contends that the court below erred in its charge to the jury. The facts are these. In its charge, the court below read section 4907 of the Crimes Code in toto:

"(a)—A person commits an offense if, believing that an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a witness or informant to:

(1) testify or inform falsely;

(2) withhold any testimony, information, document or thing except on advice of counsel;

(3) elude legal process summoning him to testify or supply evidence; or

(4) absent himself from any proceeding or investigation to which he has been legally summoned."

In Information No. 5138.25, however, appellant was specifically charged only under subsection (a)(1) of the above, rendering recitation of the entire statute superfluous. A timely objection to this was overruled by the court below.

We agree with appellant that the court owes a duty to the jury not to confuse it with instructions which are neither relevant nor related to the issues. *See United States v. Parenti*, 326 F.Supp. 717 (E.D.Pa.1971), *aff'd* 470 F.2d 1175 (3d Cir. 1972). It was thus injudicious for the court below to read to the jury portions of § 4907 not pertinent to the instant proceedings. Nevertheless, we recognize that when an appellate court reviews a jury instruction for prejudicial and reversible error, the charge must be read and considered as a whole. *Commonwealth v. Woodward*, 483 Pa. 1, 394, A.2d 508 (1978); *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977); *Commonwealth v. Dougherty*, 259 Pa.Super. 88, 393 A.2d 730 (1978). A close reading of the charge here discloses that immediately following recitation of the above section, the court narrowed the area of consideration to subsection (a)(1):

"[I]t is my belief that the offense with which the Defendant is charged in that regard, tampering with witnesses, is the fact that the Commonwealth contends that he attempted to induce or otherwise cause a witness, . . . to testify or inform falsely with regard to an official proceeding or investigation." N.T. 46 (May 19, 1976).

The court then proceeded to detail the elements of the crime with particular emphasis on the definition of "evidence" as used in the statute. In light of this careful delineation of the components of the offense, reading the entire statute to the jury did not constitute reversible error.

Appellant's final contention is that the court erred in charging the jury with regard to Information No. 5138.26.

Specifically, that bill charged appellant with conspiracy to commit the crime of false swearing under the Crimes Code, false statements under the Election Code, and tampering with witnesses. Because the charges for the substantive crimes of false swearing and false statements had been previously dismissed,[6] the court charged the jury only on the conspiracy to tamper with a witness count. Counsel's timely objection to this charge on the basis that it was not in conformance with the information was overruled.

Appellant now argues that *Commonwealth v. Field*, 223 Pa.Super. 258, 298 A.2d 908 (1972), controls and mandates a reversal on this count. In *Field*, the defendant was charged with one count of perjury which contained five assignments. One general verdict of guilty was returned on the count. On appeal, this court found at least two of the assignments to be legally insufficient. Thus, because we could not determine whether the jury based its decision on a sufficient assignment, we remanded the case for a new trial.

The short answer to this contention is that *Field* is clearly distinguishable from the instant case. The court's charge in *Field* failed to remove the insufficient assignments from the jury's consideration. Indeed, the jury's attention was specifically focused on the insufficient assignments by the charge. Moreover, much of the evidence presented at Field's trial was directed toward those deficient assignments. In contrast, the court below in the instant proceeding placed before the jury solely that part of the bill dealing with conspiracy to tamper with a witness, and not those found to be insufficient.[7] Further, because all the bills charging false

---

6. All bills dealing with false swearing were dismissed prior to trial. A demurrer was sustained to the charge of false statements under the Election Code.

7. As we noted in *Commonwealth v. Holman*, 237 Pa.Super. 291, 294–95 n. 2, 352 A.2d 159, 161 n. 2 (1975); "When the trial court sustained appellant's demurrers to the evidence of the substantive crimes, it held that there was not sufficient evidence to support a finding that appellant participated in these acts. Therefore, without a finding that appellant participated in the substantive acts, and there being no additional evidence in the case proving an agreement

swearing were dismissed prior to trial, no evidence was presented on the issue. It is thus reasonable to conclude that the legally insufficient assignments did not play a part in the jury's verdict. *See Commonwealth v. Johnson*, 133 Pa. 293, 19 A. 402 (1890).[8]

The judgment of sentence is therefore affirmed.

or plan to commit the substantive crimes, there was nothing upon which to predicate a guilty verdict for conspiracy."

8. Appellant also alleges error in the court's refusal to grant a motion for a directed verdict on that same bill. The record reveals, however, that appellant did not request a directed verdict at trial. The matter is therefore waived. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).