413 A.2d 404
**COMMONWEALTH of Pennsylvania**
v.
**William FRANKS, Appellant.**
Superior Court of Pennsylvania.
Argued March 19, 1979.
Filed Oct. 26, 1979.

280

Margaret H. Poswistilo, Easton, for appellant.

John E. Gallagher, District Attorney, Easton, submitted a brief on behalf of the Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

PRICE, Judge:

Following a jury trial completed on September 14, 1977, appellant was found guilty of burglary.[1]  Post-trial motions for a new trial and in arrest of judgment were denied, and he was subsequently sentenced to a term of imprisonment of from three to six years.  Because we now determine appellant's allegations of error by the trial court to be without merit, we affirm that judgment of sentence.

Viewed in the light most favorable to the Commonwealth as verdict winner, the facts adduced at trial are as follows. At approximately 2:35 a. m. on July 13, 1977, the owners of a garage located in Bangor, Northampton County, heard noises emanating from the garage and notified the police. Two officers responded to the call and arrived at the scene shortly thereafter.  Officer Hughes exited the patrol car and approached the front door of the garage.  Through the glass door he observed appellant come from behind the cash register to just in front of the door.  While attempting to open the door, appellant failed to respond to Officer Hughes'

---

1.  18 Pa.C.S. § 3502.

order to halt. Finally, in response to the officer's slight step backward from the door, appellant looked upward. Officer Hughes again ordered him to halt and placed the barrel of his shotgun to the window, at which time appellant ran and exited the building through a broken window. He was immediately pursued by Officer Hughes, but the chase was futile and ultimately abandoned. Examination of the garage then revealed that $8.79 had been taken from the cash register.

Officer Hughes relayed his identification of the burglar, who he recognized as appellant, to the department, and appellant was apprehended at his home at 5:00 a. m. The arresting officers confiscated $8.72 in change and a one dollar bill from appellant's bureau. Also removed from a pile of clothing were articles of apparel matching those that had been worn by the burglar.

Appellant first challenges the sufficiency of the evidence. The test for determining whether the evidence in a criminal case is sufficient is, accepting as true all the Commonwealth's evidence and all reasonable inferences therefrom, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Coades*, 260 Pa.Super. 327, 394 A.2d 575 (1978). Instantly, appellant concedes that sufficient evidence was adduced to indicate that a burglary was committed, but disputes his identification as the culprit. Pertinent to this issue, the testimony indicates that Officer Hughes observed appellant for some ten to fifteen seconds while they stood face to face approximately two feet apart and separated by the glass of the garage front door. A large lighted clock in the office illuminated appellant's face, and several streetlights shone on the garage. Officer Hughes recognized appellant from previous encounters, and testified positively that appellant was the individual in the gas station.

Appellant would emphasize the fact that his fingerprints were not found at the scene (Officer Hughes testified that

the burglar did not wear gloves) and that the two investigating officers disagreed on whether the intruder wore sneakers or leather shoes. While the absence of appellant's fingerprints and the minor discrepancy in the clothing description are of course probative, they do not vitiate the positive identification offered by Officer Hughes. The credibility and weight to be accorded a witness's testimony is for the finder of fact, who may believe all, part, or none of the proffered testimony. *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Washington*, 259 Pa.Super. 407, 393 A.2d 891 (1978); *Commonwealth v. Darush*, 256 Pa.Super. 344, 389 A.2d 1156 (1978). Here, the jury obviously chose to believe Officer Hughes, and as that decision is based on competent evidence, we will not disturb it on appeal.

Appellant next contends that the court erred in refusing to continue the trial until a subpoenaed defense witness could be found. The facts are these. Appellant desired to call one Diane Biechy for the purpose of establishing an alibi defense. Ms. Biechy had not appeared at the time trial commenced at 1:30 p. m. on September 13, 1977, and no continuance was sought at that time. The witness was still absent when the Commonwealth rested its case and the court adjourned later that afternoon. The following morning, the court granted a delay of one and one-half hours pending the arrival of Ms. Biechy. At the end of that period, appellant's counsel requested a bench warrant be issued for compelling her attendance, and summarized the proposed testimony as follows:

"The substance of the testimony that Miss Biechy would give is that the defendant, Mr. Franks, had been drinking excessively all night, since beer was ten cents a drink that night. He had consumed an inordinate amount and was quite drunk. He was in the company of Miss Beichy [sic] until twelve or 12:30 and he was with two young men until 2:30 a. m. Since there would be a geographical distance between Bangor, the site of the crime, and Wind Gap, the site of the Beer Stein, I, therefore, think that this

is a valuable defense to the defendant, and, in addition, I think that the defense of intoxication is also valuable for the defendant, since it encompasses an idea of intent." (N.T. 68–69).

The court then ordered the trial to proceed without the witness, although it did issue a bench warrant and order her to be held pending a contempt hearing. Appellant did not subsequently take the stand.

■ In *Commonwealth v. Kishbach*, 247 Pa.Super. 557, 561, 373 A.2d 118, 120 (1976), this court noted:

> "It is blackletter law that an appellate court may not reverse a trial court's denial of a continuance without a palpable and prejudicial abuse of discretion. *Commonwealth v. Warner*, 209 Pa.Super. 215, 225 A.2d 98 (1966), cert. den. 389 U.S. 986, 88 S.Ct. 477, 19 L.Ed.2d 479. See generally 24A C.J.S. Criminal Law § 1865, p. 710, n. 78. And, the rule has been applied with equal force when a witness is absent. *Id.* at p. 712."

*See also Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976); *Commonwealth v. Flynn*, 248 Pa.Super. 62, 374 A.2d 1317 (1977); *Commonwealth v. David*, 209 Pa.Super. 169, 225 A.2d 255 (1967). In exercising that discretion, the trial judge should consider whether the witness is necessary to strengthen the defendant's case, the diligence exercised to procure his presence, the facts to which the witness would testify, and the centrality of the witness to the defendant's case. *Commonwealth v. Smith*, 442 Pa. 265, 275 A.2d 98 (1971).

■ Presently, the trial court focused on the substance of the witness's testimony in denying the continuance. Appellant wished Ms. Biechy to testify so as to corroborate in part his alibi defense, a defense based on his alleged excessive drinking in a Wind Gap tavern during the time of the burglary. Commenting on the proposed testimony in this light, the trial court noted:

> "This evidence fails entirely to establish an alibi defense, since the crime was committed at approximately 2:30 A.M. in Wind Gap, [*sic*, Bangor?] Pennsylvania, a town not far

from the situs of the bar. This witness could not have testified to the Defendant's whereabouts from 12:30 onward, since she had no personal knowledge of these facts. Her testimony as to the Defendant's state of intoxication is equally inefficacious to the defense, since this witness could not have testified to the Defendant's state of intoxication at the time of the crime, which occurred some two hours after the Defendant left the witness's presence." (Opinion at 4).

Although it does appear that appellant exhibited some vigor in attempting to procure the witness, we agree that the substance of the testimony was not so critical as to warrant a further delay in trial. We consequently cannot hold that the trial judge abused his discretion in ordering the trial to proceed.

Finally, appellant reasons that the trial judge confused the jury by delivering contradictory instructions. In its final charge, the court instructed the jury that it must render a verdict "without sympathy . . . without passion and without feeling or thought of favor . . . ." (N.T. 76–A). Subsequently, the court read to the jury the following point for charge requested by appellant:

> " 'Verdicts which are not logically consistent may be returned by a jury if there is sufficient evidence supporting the conviction the jury returns. A jury, in subtle ways, may temper the rigidity of the Criminal Code in the application of the letter of the law to particular cases and may perhaps thereby mitigate the rigors of the law.' " (N.T. 100).[2]

In reviewing a jury instruction for prejudicial error, the charge must be read and considered as a whole. *Commonwealth v. Woodward*, 483 Pa. 1, 394 A.2d 508 (1978); *Commonwealth v. Dougherty*, 259 Pa.Super. 88, 393 A.2d 730 (1978). Viewed in this light, we cannot deem the two

**2.** The request was evidently prompted by the multiple charges brought against appellant, *viz.* burglary, theft, and receiving stolen property. The trial court charged the jury that in the event appellant were found guilty of burglary, he could not be convicted of the latter two charges.

instructions so contradictory as to warrant a new trial. Appellant's point for charge was nothing more than a fact often recognized by this court; namely, that logical consistency is not required in criminal verdicts provided there is sufficient evidence to support the verdict rendered. *See Commonwealth v. Kwatkoski*, 267 Pa.Super. 401, 406 A.2d 1102 (1979); *Comonwealth v. Love*, 248 Pa.Super. 387, 375 A.2d 151 (1977); *Commonwealth v. Warlow*, 246 Pa.Super. 224, 369 A.2d 1293 (1977). "Inconsistent verdicts do not necessarily indicate a gullible or irrational jury, but may rather evidence its desire to mitigate a harsh result when it concludes that sufficient punishment has been imposed on prior counts." *Commonwealth v. Kwatkoski, supra*, 267 Pa.Super. at 408, 406 A.2d at 1106. While this might be construed to imply the presence of some sympathy on the part of the jury, thus making the two statements arguably inconsistent, the inconsistency, if any, was certainly insufficient to prejudice appellant and warrant a new trial. Indeed, it is far more likely that if the jury considered the instructions at all inconsistent, it was a confusion that inured to appellant's benefit.

The judgment of sentence is consequently affirmed.