554 A.2d 919

COMMONWEALTH of Pennsylvania

v.

**Earl Joseph HALL, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1988.

Filed Jan. 20, 1989.

Reargument Denied March 15, 1989.

8

Leonard J. Frawley, Jr., Towanda, for appellant.

Mark Smith, Assistant District Attorney, Towanda, for Com.

Before BECK, KELLY and HESTER, JJ.

HESTER, Judge:

On September 19, 1985, appellant, Earl Joseph Hall, Jr., was convicted by a jury of first-degree murder, robbery and kidnapping. On September 4, 1987, judgment of sentence of life imprisonment was imposed on the first-degree murder convictions and a consecutive sentence of ten to twenty-five years imprisonment was imposed on the robbery and the kidnapping convictions. This appeal followed denial of appellant's post-trial motions and of his motion to modify sentence. Rejecting all fourteen of appellant's assignments of error, we affirm.

The facts may be summarized as follows. On October 29, 1984, appellant became acquainted with Joseph McCall, the victim, while drinking at the Lehigh Tavern in Sayre, Pennsylvania. Appellant's friend, Paul Arnold, was also drinking at the bar, and the three began to converse. McCall indicated that he wanted some marijuana, and appellant and Arnold left, obtained the substance and returned to the bar. Appellant invited the other men to a marijuana party, and the three smoked the marijuana together while Arnold drove toward the party. Arnold stopped the car in an isolated area in order to perform a private function. As he performed this task, appellant dragged McCall from the car and began beating him severely. Appellant then picked up a large rock, and lifting it over his head, threw it down on

the victim's head, killing him.[1] Later, Arnold helped appellant dispose of the body. Money was taken from the victim.

McCall's body was discovered the following day. He was identified by the bartender at Lehigh Tavern, Ruth Schoonover, who described both Arnold and appellant to the police. Schoonover knew appellant, an area resident, prior to the incident in question. Police immediately located Arnold, who related the events of the previous evening. Police apprehended appellant on October 31, 1984.

Arnold was later tried and acquitted of robbery and murder, but was convicted of tampering with evidence due to his admissions to aiding appellant in disposing of McCall's body.

Both Arnold and Schoonover testified against appellant at the trial, as did George Johnson, a friend of appellant's. Johnson testified that he was drinking with appellant at a bar, when appellant confessed to killing McCall.

The first five of appellant's issues relate to the validity of a search warrant that the police obtained in order to seize the clothing that appellant was wearing at the time he was arrested and taken into custody.

■■■ While appellant vigorously attacks the validity of the search warrant on five grounds, the fact remains that the warrant was entirely unnecessary. Appellant was incarcerated on charges of murder and robbery when police seized the clothing. Police may constitutionally seize a prisoner's clothing following arrest and detention without obtaining a search warrant. This issue was discussed extensively in *Commonwealth v. Aljoe*, 420 Pa. 198, 216 A.2d 50 (1966), where the defendant challenged the constitutionality of police actions when they seized his trousers following his arrest. A subsequent analysis revealed that they contained brain tissue. The Pennsylvania Supreme Court stated:

1. The medical evidence established that the victim died of three blows to the head.

Defendant's trousers were taken (without objection) and examined for the purpose of identifying him with the slaying of Conway. Such a procedure or practice is similar to seizing any articles, instruments, fruits and other evidence of crime and similar to the Commonwealth's right to fingerprint an accused or compel him to stand in a police lineup. Such procedures and practices and tests may result in freeing an innocent man accused of crime, or may be part of a chain of facts and circumstances which help ident'fy a person accused of a crime or connect a suspect or an accused with the crime of which he has been suspected or has been accused. The law is well settled that such actions, practices and procedures do not violate any constitutional right....

. . . .

Defendant does not allege that his arrest was other than valid and lawful. A search and seizure incident to a valid and lawful arrest is not unreasonable and violates no constitutional guarantees. In such circumstances, officers " * * * when making a lawful arrest with or without a search warrant may discover and seize any evidence, articles or fruits of crime found upon the prisoner or upon the premises under his control at the time of his lawful arrest."

*Id.*, 420 Pa. at 202–03, 216 A.2d at 52–53 (citations omitted); *accord Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974) (police could validly seize defendant's coat following his lawful arrest without violating any constitutional provisions); *Commonwealth v. Mason*, 327 Pa.Super. 520, 539, 476 A.2d 389, 398 (1984), *rev'd on other grounds*, 507 Pa. 396, 490 A.2d 421 (1985) ("The law is clear that where a defendant is in lawful custody of police as a result of a lawful arrest, ... the police are entitled to seize articles of clothing from the defendant which might possibly be used as evidence."); *see also Commonwealth v. Cope*, 359 Pa.Super. 140, 518 A.2d 819 (1986).

The United States Supreme Court later analyzed the issue and came to the same conclusion reached by the Pennsylva-

nia Supreme Court in *Aljoe.* *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). Edwards was legally arrested, incarcerated, and his clothing seized ten hours later without the use of a warrant. Evidence obtained from the clothing aided in his conviction. The United States Supreme Court upheld the search as a warrantless search incident to Edwards' valid custodial arrest, stating that "searches and seizures that could be made on the spot at the time of arrest, may legally be conducted later when the accused arrives at the place of detention." *Id.* at 804, 94 S.Ct. at 1237. Noting that police have an interest in protecting evidence from destruction, the Court ruled that all of a prisoner's belongings may be seized when he is incarcerated and that they may be subjected to laboratory analysis without offending the prisoner's constitutional rights. *Id.* The Court also stated that it was irrelevant whether the clothing is taken upon arrival at the jail pursuant to administrative processing or whether it is taken later solely for use as evidence at trial. *Id.* at 808, 94 S.Ct. at 1239.

In this case, appellant's arrest was lawful, and police constitutionally seized his clothing incident to that lawful arrest. The validity of the superfluous search warrant is, accordingly, irrelevant.

Issues six and seven relate to the prosecution's closing argument. First, appellant argues that the prosecutor's comments regarding the legal definition of reasonable doubt were inaccurate and that the trial court's specific curative instruction regarding those remarks was both untimely and inadequate. The allegedly improper comments are as follows:

*There was a lot of talk about reasonable doubt at this trial.* I think you have all been asked that if there is a reasonable doubt, will you follow your duty to vote not guilty and I think most of you have been asked if there is no reasonable doubt, will you follow your duty, your absolute duty, to vote guilty if the Commonwealth has proven its case. *Well don't take our instruction for*

*what a reasonable doubt is. That is the Judge's job. He has the instruction. Don't take our instruction for what a reasonable doubt is and what a reasonable doubt is not. The judge will tell you what a reasonable doubt is and what a reasonable doubt is not. Listen to the Judge's instruction.* The burden of proof for the Commonwealth, is it as heavy as it might have been argued? I suppose I would be about four foot three from trying to carry that burden around for a week, but isn't a reasonable doubt that the judge tells you about any different from your own sense of fair play, common decency, your own feelings of justice?

Notes of Testimony ("N.T."), 9/19/85, at 45–46 (emphasis added).

Second, appellant accuses the prosecution of improperly rendering an opinion as to his veracity with the following closing remarks:

I guess we could have cut the trial down to three witnesses because there are only three or four perhaps that you really need to consider, George Johnson has nothing to gain by testifying here. George Johnson who when he came forth with the truth is going to be faced with embarrassment and investigation. Paul Arnold the truth he told brought him into embarrassment and investigation and Earl Hall whose testimony that he bought had an interest. Earl Hall is the person that is on trial here. Earl Hall is the only one person that has something to gain, and nothing to lose by telling the truth. Nothing, has something to gain and nothing to lose by not telling the truth. Earl Hall.

*Id.* at 50–51.

The law in this area is settled:

A prosecutor, just as a defense attorney, must have reasonable latitude in presenting a case to the jury and *"must* be free to present his or her arguments with 'logical force and vigor.'" .... The prosecutor's remarks to the jury "may contain fair deductions and legitimate inferences from the evidence presented during

the testimony." .... Moreover, "not every intemperate or uncalled for remark by the prosecutor requires a new trial." .... Rather, reversible error exists only if the "unavoidable effect" of the language used "would be to prejudice the jury forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.... Finally, the effect of such remarks is largely dependent on the atmosphere at trial, ... and the proper action to be taken, upon objection, is within the discretion of the trial court."....

*Commonwealth v. Hamilton,* 376 Pa.Super. 404, 410–11, 546 A.2d 90, 94 (1988) (citations omitted) (emphasis in original). Furthermore, the prosecutor may discuss the applicable law, *Commonwealth v. Duffey,* 519 Pa. 348, 548 A.2d 1178 (1988).

■ Here, the comments of the prosecutor regarding reasonable doubt were not inaccurate. He repeatedly told the jury to listen to the judge's, not the attorneys', definition of the term. To the extent he did discuss the concept of reasonable doubt, the discussion must be viewed as nothing more than fair response to defense counsel's closing remarks, which contained extensive discussion of the Commonwealth's burden of proof and which characterized that burden as inordinately heavy. *See* N.T., 9/19/85, at 5–7, 22, 25.

■ The prosecutor's comments regarding appellant's testimony were fair inferences from the evidence, and we have ruled that similar commentary was not improper. *See Commonwealth v. Rozanski,* 289 Pa.Super. 531, 433 A.2d 1382 (1981) (comments that prosecutor was going to analyze defendant's testimony piecemeal to establish that defendant disobeyed his oath to tell the truth was not improper since prosecutor never stated that he disbelieved defendant, but analysis of testimony would establish defendant's untruthfulness).

In conclusion, the two passages at issue were not improper. However, assuming that they were, neither would have

so prejudiced the jury that it would not have been able to render a true verdict.

Appellant next argues that the consecutive sentences of imprisonment of four to ten years for kidnapping and six to fifteen years for robbery are excessive. This is a challenge to a discretionary aspect of his sentence.

In *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), the Supreme Court of Pennsylvania indicated that three distinct steps must be taken to properly raise a challenge to the discretionary aspects of sentence: there must be a timely notice of appeal (*see* Pa.R.A.P. 902 & note; Pa.R.A.P. 903); the challenge must be set forth in the statement of questions presented (*see* Pa.R.A.P. 2116(b)); and the appellant must include in the brief, immediately preceding argument in support of the challenge, a separate, concise statement of the reasons for allowance of appeal under 42 Pa.C.S. § 9781(b) (*see* Pa.R.A.P. 2119(f)). *See Commonwealth v. Darden*, 366 Pa.Super. 597, 601–02, 531 A.2d 1144, 1146 (1987). Furthermore, "[i]t is only where a party can articulate reasons why a particular sentence raises doubts that [the sentencing] scheme *as a whole* has been *compromised* that the appellate court should review the manner in which the trial court exercised its discretion." *Commonwealth v. Tuladziecki, supra*, 522 A.2d at 20 (emphasis added).

██ In the instant case, timely notice of appeal was filed, and appellant's challenge to the discretionary aspects of the sentence was included in the statement of questions presented. Although appellant did not include in his brief, immediately preceding argument in support of the challenge, a separate, concise statement of the reasons for allowance of appeal, the Commonwealth has not objected to this procedural defect and thus the defect is not fatal to consideration of whether there is a substantial question for review. *See Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (en banc).

■ Next, we must determine whether appellant has raised the appearance of a substantial question as to whether the sentence imposed is appropriate under the Sentencing Code as a whole, 42 Pa.C.S. §§ 9701–9781. Under 42 Pa. C.S. § 9781(b), the appearance of a substantial question determines whether this court *may* grant allowance of appeal of the discretionary aspects of sentence, while the sound discretion of the court determines whether the court *will* grant review. *Commonwealth v. Darden, supra,* 366 Pa.Super. at 603, 531 A.2d at 1147.

As we recently noted n *Commonwealth v. Losch,* 369 Pa.Super. 192, 535 A.2d 115 (1987):

> What constitutes a "substantial question" under section 9781(b) must be evaluated on a case by case basis. However, we will be inclined to allow an appeal where an appellant advances a colorable argument that the trial judge's actions were: 1) inconsistent with a specific provision of the Sentencing Code; or 2) contrary to the fundamental norms which underlie the sentencing process. *See, e.g., Commonwealth v. Knighton,* 490 Pa. 16, 415 A.2d 9 (1980) (sentence must be adjudicated by fair and impartial judge); *Commonwealth v. Bethea,* 474 Pa. 571, 379 A.2d 102 (1977) (sentence may not be based in part on impermissible consideration).

369 Pa.Super. at 201 n. 7, 535 A.2d at 119 n. 7; *see also Commonwealth v. Thompson,* 377 Pa.Super. 506, 547 A.2d 800 (1988).

■ Appellant alleges that the sentences for kidnapping and robbery were excessive because "relatively speaking, the kidnapping was not serious," and "the robbery did not involve a large sum of money." Appellant's brief at 44–45. In addition, "the defendant's prior criminal record is minor. He is a financially, intelligently, and emotionally indigent person. Perhaps someday the state may consider commuting his sentence. The sentencing Court, by the sentence imposed, will be sending a very negative and improper message." *Id.* at 45. Appellant has failed to advance a colorable argument that the trial judge's actions were incon-

sistent with a specific provision of the Sentencing Code, or contrary to the fundamental norms which underlie the sentencing process; he, therefore, has not presented a substantial question for review. We, accordingly, will not review appellant's sentence.

■ Appellant's next issue concerns the trial court's failure to grant him a change of venue on the basis of pretrial publicity. However, the record does not contain a single newspaper article. Since there is nothing in the record regarding the publicity for us to review, we are compelled to affirm the trial court's determination, for it is the trial court which has discretion in this matter. *Commonwealth v. Romeri*, 504 Pa. 124, 470 A.2d 498 (1983).

■ Appellant's next assignment of error concerns jury deliberations. Initially, the jury returned a verdict of guilty of first-degree murder, robbery and kidnapping, but failed to return a verdict with respect to the remaining charges which involved lesser included offenses. The trial court then instructed the jury to continue deliberations and return a verdict on all charges. It did so, finding appellant not guilty of the remaining charges. Appellant suggests that the trial court limited further deliberations by failing to specifically instruct the jury that it could continue to deliberate on the charges as to which guilty verdicts had already been returned. This argument has been waived. Appellant did not request the trial court to instruct the jury to continue to deliberate on all charges, and cannot complain now about the absence of such instructions. Furthermore, the instruction given did not have the effect suggested by appellant. The trial court merely told the jurors to continue deliberations on the remaining charges, it did not forbid them from reconsidering their other verdicts.

■ Appellant also argues that the verdict is against the weight of the evidence due to the fact that Johnson was not a credible witness. Appellant attacks Johnson's credibility on the grounds that he regularly used cocaine and probably did not accurately remember appellant's confession. How-

ever, we are not permitted to disturb the fact finder's decision as to the credibility of a witness. *Commonwealth v. Jackson,* 506 Pa. 469, 485 A.2d 1102 (1984); *Commonwealth v. Zankowski,* 377 Pa.Super. 256, 546 A.2d 1254 (1988). The determination as to the credibility of a witness is within the *sole* province of the fact finder. *Commonwealth v. Jackson, supra.* The jury chose to believe Johnson's testimony regarding his recollection of the contents of appellant's confession, and we cannot reject its decision. *Id.* Moreover, Johnson's testimony was collaborated both by Arnold's testimony, which the jury also chose to believe, and by the blood stains found on appellant's trousers. We will not disturb the jury's determination that Johnson's recollection of appellant's confession was accurate despite his use of cocaine.

 Appellant also argues that the trial court's instruction defining murder in the first degree was inadequate. Although the court used the standard jury instruction in defining first-degree murder, appellant claims that the need to focus upon the concept of deliberation was especially important in this case in that he was drugged and intoxicated at the time of the murder and "although voluntary intoxication does not excuse murder, it is possible that someone is so intoxicated that [he is] incapable of deliberate action and thus ... incapable of committing murder one." Appellant's brief at 49. There is no indication that the jury received confusing or unbalanced instructions as appellant claims. The instructions used were the standard jury instructions for first-degree murder; they were given accurately; and they were sufficient in defining the elements of first-degree murder. Thus, there was no error in the trial court's instructions.

 Appellant's thirteenth argument is that the verdicts were inconsistent since he was found not guilty of second and third degree murder, but was found guilty of first-degree murder and since he was found not guilty of theft and robbery where slight force was utilized, but was found guilty of robbery where serious bodily injury was used.

The argument, although accurate, does not contain a basis for reversal of appellant's convictions. The law in this Commonwealth is that inconsistent verdicts are not grounds for reversal. *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971); *Commonwealth v. Franks*, 271 Pa.Super. 278, 413 A.2d 404 (1978). We are powerless to alter the decisional law of our Supreme Court as requested by appellant. *Commonwealth v. Butch*, 257 Pa.Super. 242, 390 A.2d 803 (1978). Accordingly, we reject this as grounds for reversal of appellant's convictions.

■■ Appellant's final complaint is that the trial court improperly curtailed his direct examination. Appellant's attorney wanted to ask him historical questions, such as who was President during the civil war. This would have allegedly demonstrated appellant's limited intelligence, thus establishing why he did not go to the police following the murder. (As a witness, appellant should have gone to the police.) We affirm the trial court's decision. The questions concerned historical data irrelevant to the issues in the case and to which appellant easily could have fabricated his ignorance of the correct response.

Judgment of sentence affirmed.