J-S76038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN SHERMAN FELTON | |
| Appellant | No. 3306 EDA 2015 |

Appeal from the Judgment of Sentence September 21, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000857-2013

BEFORE:  STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 21, 2016**

Appellant Steven Sherman Felton appeals from the judgment of sentence entered by the Honorable Kelly L. Banach of the Court of Common Pleas of Lehigh County after a jury convicted Appellant of ten counts of robbery (all graded as first degree felonies) and two counts of theft by unlawful taking (both graded as first degree misdemeanors).[1]  Appellant claims his convictions are against the weight of the evidence and that the trial court abused its discretion in imposing several consecutive sentences which resulted in an aggregate sentence of 62 to 124 years imprisonment. After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), and 3921(a), respectively.

Appellant was charged in connection with eleven robberies of convenient stores, beverage stores, and cigarette retailers in the Lehigh Valley between September 2, 2012 and November 20, 2012. The trial court's February 5, 2016 opinion describes the investigations of each robbery in specific detail. We adopt the trial court's thorough discussion of the factual background of the eleven robberies in its Rule 1925(a) opinion, which is attached to this decision. **See** Trial Court Opinion, 2/5/16, at 3-12.

Appellant proceeded to a jury trial where the eleven robbery cases were consolidated. Appellant chose to represent himself at trial with Alexandra French, Esq. acting as standby counsel. On August 7, 2015, the jury convicted Appellant of ten counts of robbery and two counts of theft by unlawful taking, but acquitted him of one count of robbery. On September 21, 2015, the trial court sentenced Appellant to six to twelve years' imprisonment on each robbery conviction and one to two years' incarceration on each theft conviction. As all sentences were set to run consecutively, Appellant received an aggregate sentence of 62 to 124 years' imprisonment.

On September 30, 2015, Atty. French filed a post-sentence motion on Appellant's behalf, which the trial court denied on October 1, 2015.[2]

_____

[2] Before Atty. French could file a post-sentence motion, Appellant filed a *pro se* notice of appeal on September 29, 2015. While Appellant's notice of appeal was premature when it was filed, Appellant's appeal was perfected by the subsequent action of his standby counsel in filing a timely post-sentence
*(Footnote Continued Next Page)*

Appellant filed this timely appeal on October 30, 2015 and complied with the trial court's directions to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

A. Was the verdict against the weight of all the evidence in regards to the proof of whether or not [Appellant] was guilty of the charges?

B. Whether or not the trial court abused its discretion by imposing an excessive aggregate sentence through the entering of multiple consecutive sentences upon [Appellant]?

Appellant's Brief, at 7.

When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

motion which the trial court reviewed and denied on the merits. ***See Commonwealth v. Cooper***, 611 Pa. 437, 27 A.3d 994 (2011) (concluding the trial court appropriately treated the appellant's *pro se* notice of appeal as a premature filing that was perfected upon the trial court's proper consideration and denial of the subsequent counseled post-sentence motion).

- 3 -

them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Mucci*, 43 A.3d 399, 410–11 (Pa.Super. 2016), (quoting *Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054–55 (2013). To successfully challenge the weight of the evidence, the defendant must prove that the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Mucci*, 43 A.3d at 411 (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa.Super. 2003)).

In this case, the Commonwealth presented evidence of numerous robberies that occurred over a three-month period (September to November 2012) in the Lehigh Valley. The robberies were committed by a suspect wearing dark clothing, who would select an item to purchase, attempt to purchase the item, and brandish a firearm when the clerks opened the cash register. The suspect would demand cash or the entire register and then flee on a bicycle or in a blue GMC Envoy SUV. The majority of the clerks were able to give detailed descriptions of the suspect that matched Appellant's appearance or were able to identify Appellant from a photo array or lineup. Appellant was also recorded on video surveillance at several of the robberies. Officers discovered clothing described by the victims at Appellant's home.

Appellant does not specifically challenge any of the prosecution witnesses' testimony but generally claims that their identifications were inconsistent and points out that none of the witnesses noticed his tattoos. We reject this assertion as the majority of the victims were able to give detailed descriptions of the suspect's appearance or firmly identified Appellant as the robber despite being under the pressure of a gunman threatening to shoot them. We find meritless Appellant's attempt to discount the victims' testimony that did not mention his tattoos as the victims noted the robber wore long-sleeved sweatshirts with hoods which would have concealed all of his upper body except his face. When confronted with video surveillance of the robberies, Appellant placed himself at the scene, smirking and asserting that "[t[hese photos don't show me doing anything." N.T. Trial, 8/5/15, at 207. Accordingly, we find the trial court properly exercised its discretion in denying Appellant's weight of the evidence claim.

Appellant also claims the trial court abused its discretion in imposing multiple consecutive sentences which totaled 64 to 128 years' imprisonment. Appellant characterizes his aggregate sentence as "in essence, a life sentence with no legitimate hope for any parole." Appellant's Brief, at 10. Appellant's argument challenges the discretionary aspects of his sentence.

It is well-established that "[a] challenge to the discretionary aspects of sentencing does not entitle an appellant to review as of right." *Commonwealth v. Bynum-Hamilton*, 135 A.3d 179, 184 (Pa.Super.

2016). In order to invoke this Court's jurisdiction to address such a challenge, the appellant must satisfy the following four-part test: the appellant must (1) file a timely notice of appeal pursuant to Pa.R.A.P. 902, 903; (2) preserve the issues at sentencing or in a timely post-sentence motion pursuant to Pa.R.Crim.P. 720; (3) ensure that the appellant's brief does not have a fatal defect as set forth in Pa.R.A.P. 2119(f); and (4) set forth a substantial question that the sentence appealed from is not appropriate under the Sentencing Code under 42 Pa.C.S. § 9781(b). *Id*. An appellant can raise a substantial question for our review by showing that "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa.Super. 2005) (citation omitted).

Appellant filed a timely notice of appeal, preserved his sentencing claim in a post-sentence motion, and submitted an appellate brief containing the requisite Rule 2119(f) concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence. As noted above, Appellant asserts that his sentence is manifestly unreasonable based on the trial court's decision to run all of his sentences consecutively.

Although a sentencing court must conduct an individualized assessment of the circumstances of each case, the court is not required to impose the most lenient term of confinement available under the law.

***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa.Super. 2010). The sentencing court "has discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question." ***Id***. (citation omitted); ***see also*** 42 Pa.C.S. § 9721(a); ***Commonwealth v. Hoag***, 665 A.2d 1212, 1214 (Pa.Super. 1995) (stating that an appellant is not entitled to a "volume discount" for his crimes by having all sentences run concurrently). However, "[t]he imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Moury***, 992 A.2d 171-72 (citation omitted).

This Court has held that "the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." ***Commonwealth v. Mastromarino***, 2 A.3d 581, 587 (Pa.Super. 2010). In ***Mastromarino,*** this Court found the appellant had not raised a substantial question that his aggregate sentence of 25 to 58 years imprisonment was excessive when the trial court found it appropriate to impose consecutive sentences for his numerous convictions which included *inter alia*, abuse of corpse and 244 counts of theft by unlawful taking. Appellant was convicted of these offenses for his role in a criminal conspiracy where the defendants

- 7 -

used their licenses as funeral directors to harvest body parts from 244 corpses without the consent of the deceased or their kin, sell them to tissue banks, and disguise the tissue as healthy transplant donations. ***See also Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 599 (Pa.Super. 2010) (finding the appellant's challenge did not raise a substantial question that his 20 to 40 year aggregate sentence was excessive when he was involved in the robbery and kidnapping of two individuals).

In this case, Appellant was convicted of eleven counts of armed robbery for his extensive crime spree in which he terrorized store clerks of gas stations, convenient stores, and alcohol and cigarette retailers throughout the Lehigh Valley. In each crime, Appellant threatened to shoot the victims with his firearm if they did not comply with his demand for cash or the entire register. Appellant's bare assertion of excessiveness and request for a volume discount for his numerous violent crimes does not present a substantial question that the trial court's decision to run his sentences consecutively was inappropriate or contrary to a fundamental norm underlying the Sentencing Code. As a result, we decline Appellant's request for allowance of appeal as to the discretionary aspects of his sentence.

For the foregoing reasons, we affirm Appellant's judgment of sentence. Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/21/2016

**IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA |

vs. | No. 857/2013
| 3306 EDA 2015

STEVEN S. FELTON, |
        Appellant |

## OPINION

**KELLY L. BAÑACH, J.:**

A Jury Trial was held in the above-captioned matter from August 3 through August 7, 2015. The Appellant represented himself at Trial, with Alexandra French, Esquire, of the Lehigh County Office of the Public Defender, acting as standby counsel. On August 7, 2015, the Appellant was convicted of ten counts of Robbery, graded as Felonies of the First Degree, and two counts of Theft by Unlawful Taking, graded as Misdemeanors of the First Degree.

During the Jury Trial, various items were admitted into evidence, including surveillance videos from many of the crime scene locations, police photograph arrays, items and articles of clothing recovered during a search warrant performed on the Appellant's home, and photographs of the scenes of the robberies and the Appellant's wife's automobile.

On September 21, 2015, the Appellant was sentenced to an aggregate sentence of not less than 62 years nor more than 124 years in a State Correctional Institution.

On September 30, 2015, Attorney French filed a Post-Sentence Motion on the Appellant's behalf. The Motion was denied on October 1, 2015. On October 30, 2015,

2

the Appellant filed the instant Notice of Appeal. He then filed a Statement of Matters Complained of on Appeal with this Court on December 9, 2015.[1] This Opinion follows.

## SUMMARY OF THE FACTS

On September 2, 2012, Manoj Tailor was working at the Cigar & Cigarette Outlet located at 2158 Stefko Boulevard, Bethlehem, Northampton County, Pennsylvania. Between 8:30 a.m. and 9 a.m., a man came in the store and bought a Philly Blunt (small cigar). He brought the item to Mr. Tailor at the front register and gave him money to pay for the item. When Mr. Tailor opened the register drawer to give the man change, the man showed him a gun and told him to hand over the cash register. Mr. Tailor complied and handed him the entire register, which contained approximately $400. Mr. Tailor noted that the man fled on a bicycle. Mr. Tailor called the police about one minute later.

On October 6, 2012, Edna Lanier was working at the Top Star Gas Station, located in Whitehall, Lehigh County, Pennsylvania. At approximately 8:30 a.m. while alone in the store, Ms. Lanier noticed a short black man select two juices/iced tea bottles from the refrigerated section and proceed to the register. Ms. Lanier rang up the purchases and the man handed her two dollars. When she opened the cash drawer, he demanded the money from the register. Ms. Lanier was extremely nervous and put the drawer on the counter. She stood with her hands up in the air as the man demanded $100 bills. Ms. Lanier told him that she did not have any and due to her fright, urinated on herself. The man told her to put her hands down and took the money from the register. After he had taken the money, another customer came in. The man left and Ms. Lanier immediately locked the store door, telling the customer what had just happened. Approximately $80 was taken from the register. Ms. Lanier

---

[1] For purposes of this Appeal, the Office of the Public Defender represents the Appellant.

3

stated that during the robbery she concentrated on the man's face and the gun pointed at her. They made eye contact during the robbery and Ms. Lanier was able to identify the Appellant in court as the man who robbed her at the Top Star that day.

On October 11, 2012, Tera Sweat was working at the Hess Gas Station[2] located at 1043 Lehigh Street, Allentown, Lehigh County, Pennsylvania. At approximately 10:30 p.m., as Ms. Sweat was cleaning up the store, an individual entered the store. Ms. Sweat began to feel uneasy and kept her distance from the individual. The individual approached the counter area and knocked the screen off of the top of the register and grabbed the entire register, which contained approximately $100. Ms. Sweat was approximately 20 feet away from the individual at the time and was able to look at the man when he initially entered the store. The individual was wearing a long-sleeved, zipped, hoodie sweatshirt. Ms. Sweat provided a description to the police and was able to identify the Appellant as the individual who took the register at trial.

At the time of the incident, Stephen Rivera lived right behind the Hess Gas Station. On that evening, Mr. Rivera was sitting on his porch smoking a cigarette. He's attention was drown to the sound of change rattling. Mr. Rivera then saw a man on a bike with a black box. He looked over his balcony and saw the same man throw the bike into an SUV and drive away without the lights on. He noted that the man was wearing a gray hoodie sweatshirt and blue jeans, but he was unable to see the individual's face because the hood was tied down.

On October 12, 2012, at approximately 1 p.m., Asif Afzal was working at the US Gas Station, located at 360 North 3rd Street, Coopersburg, Lehigh County, Pennsylvania. At that time, an individual wearing long sleeves came into the store and selected a soda can. As Mr. Afzal was ringing up the transaction, the individual asked

---

[2] The Hess Station has changed its name to Speedway since the time of the incident.

4

him for money and showed him a gun. Mr. Afzal gave the man the money from the register and the man fled. Mr. Afzal pushed the silent alarm and the police responded in 3 to 6 minutes. Approximately $1,100 was stolen. Mr. Afzal was able to get a good look at the individual and identified the Appellant as the perpetrator during the trial.

On October 16, 2012, Woo Choi was working at Liberty Bell Beverage, located at 1438 Chestnut Street, Emmaus, Lehigh County, Pennsylvania. That evening, as Mr. Choi was making his way from the cooling room to the front of the store by the register, he noticed an individual leaving the store. Mr. Choi then discovered that all of the money (approximately $400) previously in the register was missing. Mr. Choi called the police and showed them the video surveillance from the store's camera system. The surveillance video was shown at the time of trial and depicts an actor, wearing a hockey-type white mask, taking cash from the register drawer.

On the same day, at approximately 8:15p.m. Humphrey Anousaya, owner of Jordan Park Beverage located at 1208 MacArthur Road, Whitehall, Lehigh County, Pennsylvania, noticed a man come into the store. Mr. Anousaya was seated in his office, on the right-hand side of the store, surrounded by a thick Plexiglas window. There is a side door through which Mr. Anousaya could enter and exit the office. The register was located inside of the office area with Mr. Anousaya. The man asked for a carton of Newport cigarettes and gave Mr. Anousaya a $20 bill. Mr. Anousaya opened the cash register to give the man change. The man then demanded the cash and when Mr. Anousaya looked up, he saw a gun pointed at him. The man again demanded the cash. Mr. Anousaya tapped the register drawer closed and the man attempted to grab the entire register. Mr. Anousaya was able to slap the register back into the office and to slide the Plexiglas window shut and lock it. The man attempted to come into the office via the side door, but found it locked. Mr. Anousaya noticed

5

that the man was wearing a gray hoodie sweatshirt. The man then left out of the front door, got on a bicycle and fled. Mr. Anousaya was 70% sure that the Appellant was the same individual who attempted to take the cash register from his store.

On October 18, 2012, Detective Stephen Milkovits, of the Allentown Police Department, responded to the Shell Gas Station located at 1323 North Nineteenth Street, Allentown, Lehigh County, Pennsylvania for a report of an armed robbery. When he arrived, he spoke with patrol officers already on scene and the clerk involved in the robbery. He also reviewed surveillance video, which was shown to the Jury at the time of trial. The video depicted the suspect wearing dark clothing and a Chicago Blackhawks wool cap.

On October 23, 2012, Inderjeed Kauer was working at the King Mart store, located in Easton, Northampton County, Pennsylvania. Between 9 and 10 p.m. that evening, Ms. Kaur was taking her break near the cash register area while her fellow employee attended the register. An individual came into the store and asked for cigarettes. When the other employee opened the register to complete the transaction, the individual asked the employee for the money in the cash register and displayed a gun. The employee asked Ms. Kaur what he should do and, once the suspect showed her the gun, Ms. Kaur instructed the employee to hand over the money. Surveillance video from the transaction showed that the suspect reached over the register and helped himself to cash in the register drawer first, and then demanded additional cash. Ms. Kaur was unable to identify the suspect.

At the same time, Toni Byers was outside of the King Mart, in her vehicle. She observed a bicycle parked outside of the King Mart. She exited her vehicle to enter the King Mart and saw an individual exit the King Mart wearing a hooded sweatshirt and dark clothing. The individual got on the bike and rode it to the alleyway on the right

6

side of the building Although Ms. Byers was initially afraid to cooperate as a witness, she eventually spoke to the police about the incident and was able to pick the Appellant out of a photo array as the individual she saw exiting the King Mart and getting on the bicycle.

On the same evening, at approximately 10:45 p.m., Luis Guillermo was working at the Lukoil Gas Station located at 2450 Catasauqua Road, Bethlehem, Lehigh County, Pennsylvania, as a station attendant. Mr. Guillermo noticed a truck parked in front of the station and saw a customer enter the store. The two made eye contact. The individual selected a Snapple from the cold case and brought it to the counter. The individual seemed friendly. As Mr. Guillermo opened the drawer of the register, the individual asked him for the money in the drawer. Mr. Guillermo asked the individual if he was joking and the individual again asked for the money, this time showing Mr. Guillermo a gun in his waistband. Mr. Guillermo asked if the individual was really robbing him and eventually handed over the cash in the drawer. The individual was wearing a green hoodie, tied tightly around the face, jeans and a wool cap. When Mr. Guillermo was shown a police photo array, he identified the Appellant as the man who had taken the cash from the register. Mr. Guillermo was 100% sure of his identification.

Lieutenant Michael Marks of the Whitehall Township Police Department was assigned to investigate the two robberies which had occurred in Whitehall Township.[3] He became aware that similar robberies with a similar suspect had been occurring in multiple jurisdictions throughout the Lehigh Valley. On October 26, 2012, Lieutenant Marks and other investigators from Coopersburg, Allentown, Easton and Bethlehem met at the Lehigh County District Attorney's Office to discuss the robberies.

---

[3] Specifically, the robberies at the Top Star Gas Station on October 6, 2012 and at Jordan Park Beverage on October 16, 2012.

7

On November 13, 2012, Sajjad Haider was working at the Sunoco MiniMart and Gas Stating in Whitehall, Lehigh County, Pennsylvania as a cashier. At approximately 9 p.m. a man came into the store and selected a Snapple iced tea. When he paid for the Snapple, and Mr. Haider opened the cash register drawer to give him change, the man stated that he had a gun and showed it to Mr. Haider. He demanded all of the money in the register and leaned over the counter to take the money himself. There was approximately $400 in the drawer at the time. Mr. Haider was scared. The lottery money is kept in a separate drawer at the Sunoco. The individual demanded the lottery money as well, which was approximately $200. The man next demanded the money that Mr. Haider had in his own pockets. Mr. Haider surrendered the $400 to $500 in his own pocket. The man was wearing trousers, a black hoodie sweatshirt, a long coat, and sneakers. Mr. Haider was able to identify the individual in a photo array, but could not make an in-court identification at the time of trial.

On November 20, 2012, Rebecca Miller was working at the Hess Gas Station in Coopersburg, Lehigh County, Pennsylvania as an assistant manager. At approximately 9:45 p.m., a man walked into the store and asked for cigarettes. He was wearing a bulky jacket, with a hood pulled up and dark pants. He put his money on the counter and said something but Ms. Miller didn't understand him. When she looked up, she saw a gun pointed at her face. She handed approximately $100 from the register to the man. The man asked for more money and the lottery money. Ms. Miller told him there was no other money. The man left.

On November 21, 2012, Dhaivat Vyas was working at his store, Smokes to Go, located at 350 Washington Street, Easton, Northampton County, Pennsylvania. At approximately 8:30 a.m., Mr. Vyas was just exiting the bathroom area of his store when he noticed a man, holding a gun, approaching the employee at the register. The

8

employee handed the man between $300 and $400 from the register, and an additional $40 from the employee's pocket. Mr. Vyas was approximately 40 feet away from the event and was able to see the suspect. Mr. Vyas reviewed the surveillance video from his store after the incident and noted that the man left the store in a blue SUV.

Police were able to obtain surveillance video from the Wawa and McDonald's Restaurant located in close proximity to the Smokes to Go. The videos depict a blue SUV in the area at the approximate time of the robbery. Lieutenant Michael Marks, of the Whitehall Township Police, was able to review the still photos taken from the videos and determined that the SUV in question was a GMC Envoy and that it had two distinguishing marks: a black dot and horizontal stripe on the rear cargo window (later determined to be an outdated cellular telephone antenna) and left rear bumper damage.

On or about November 23, 2012, at the monthly crime meeting attended by various law enforcement agencies in the area, Lieutenant Marks learned of the robbery that had occurred at Liberty Bell Beverage in Emmaus. Although the incident and the actor shown on the video surveillance appeared similar to the other robberies that were occurring throughout the Lehigh Valley, it struck Lieutenant Marks as strange that the suspect in that robbery wore a hockey-style mask, appearing to only be concerned with hiding his identity during this particular robbery in Emmaus. Based on the reviewed surveillance videos obtained in connection with the robbery at the Smokes to Go, Lieutenant Marks focused his attention on investigating GMC Envoys in the Emmaus area. He discovered only 7 blue GMC Envoys in the area. When he researched the registration on these vehicles, one came back as registered to Josephine Felton, the Appellant's wife, with an address in Emmaus.

9.

On November 29, 2012, Lieutenant Marks contacted Detective Andrew Artim of the Lehigh County Drug Task Force to request that he conduct surveillance on the blue GMC Envoy registered to Mrs. Felton. At approximately 3 p.m., Detective Artim found the vehicle at Cigars International, Mrs. Felton's place of employment. He watched as Mrs. Felton got into the vehicle and followed her as she picked up some children in Allentown. Detective Artim lost track of the vehicle in Allentown, but proceeded to the Felton residence in Emmaus. At approximately 7:50 p.m., the blue GMC Envoy arrived. Detective Artim was unable to identify the individual who exited the vehicle. However, on the porch area of the house, Detective Artim observed a person with a black jacket and a younger female. He watched as the two entered the residence.

At approximately 8:20 p.m., a male came out of the residence wearing a black hoodie with white strings hanging down, a black knit cap, and black pants. The male got into the GMC Envoy and drove away. Detective Artim followed the vehicle as it left Emmaus and proceeded to Route 663 and Route 29, in Marlborough Township, Montgomery County, Pennsylvania. Because Detective Artim was out of his jurisdiction, had no radio contact with the local police department, and was wearing plain clothes, Detective Artim broke off surveillance at approximately 9:50 p.m. and alerted Lieutenant Marks that the vehicle was no longer under surveillance.

On the same day, at approximately 10:45 p.m., Gurpreet Kaur was working at the BP gas station on Valley Forge Road, Lansdale, Montgomery County, Pennsylvania. A male customer came into the store and asked for Newport cigarettes. He paid for the cigarettes and then showed Ms. Kaur a gun. He asked Ms. Kaur to open the register and she asked him to put the gun away. The man complied and asked her for money. Ms. Kaur told him he could have the money. The man took the money and

said "sorry" as he left the store. Ms. Kaur immediately called 9-1-1. Approximately $500 was stolen.

On November 30, 2012, the following day, Lieutenant Marks learned of the robbery at the BP gas station in Montgomery County. He obtained surveillance video and showed the surveillance video to Detective Artim. Detective Artim believed that the suspect in the video was the same person he observed driving the GMS Envoy the previous evening. Detective Artim resumed surveillance and the Appellant was taken into custody that evening at approximately 5 p.m. $432 in US currency and miscellaneous items were recovered from the Appellant's person.

A search warrant was prepared for the Appellant's residence and was executed on November 30, 2012. A birth certificate and voter's identification belonging to the Appellant, jeans, a knit cap, a baseball cap, a gray hoodie, a gray hoodie with white strings, a black hoodie with white strings, a gray pullover sweatshirt, a Blackhawks knit cap, and black Nike sweatpants were found within the residence. Sergeant Timothy Hoats of the Emmaus Police Department assisted in serving the warrant and searched the master bedroom. There, he found a white hockey mask in the closet and a pack of Newport cigarettes on a nearby desk. In the basement, a television with holes in the screen was found. In one of the side bedrooms, a Walther 99P replica BB/Pellet gun was recovered from a shelving unit.

Lieutenant Marks interviewed the Appellant at the Emmaus Police Department. During the interview, Lieutenant Marks showed the Appellant still photographs taken from the surveillance videos of the robberies that occurred at the Allentown Shell Station and the Top Star in Whitehall. He also showed the Appellant a side-by-side comparison of the Appellant's photograph and a still photo taken from the surveillance video of the robbery that took place at the Hess Station in Coopersburg. Upon viewing

11

the photographs, the Appellant's mouth dropped open and he attempted to suppress a smile. After he looked through the photographs, the Appellant stated "These photos don't show me doing anything."

Chailyn Janae Humphrey, the stepdaughter of the Appellant, testified that the Nike wind pants recovered from the Felton residence were, in fact, hers. She further stated that the Appellant had never worn those pants. She also testified that the Appellant is employed as a tattoo artist and has had many tattoos for several years. She identified two of the hoodie sweatshirts recovered from the Appellant's residence as belonging to the Appellant. However, she did not recognize the hockey mask or the Blackhawks hat.

Although some items recovered from some of the robberies were sent out for fingerprint testing, the results were inconclusive.

### DISCUSSION AND CONCLUSIONS OF LAW

In his Statement of Matters Complained [of] on Appeal, the Appellant argues (a) that the verdict was against the weight of the evidence because there were "substantial inconsistencies, contradictions and conjecture . . . regarding the identification of the perpetrator" and (b) that the Court erred in sentencing the Appellant to consecutive individual sentences, which resulted in a sentence that "manifestly excessive and harsh and far exceeded any reasonable period of incarceration necessary for the [Appellant]" and because the Court failed to set fort appropriate reasons for such a gross deviation from the sentencing norms for such a case." App. Stmt. of Matters Compl. ¶1-2.

*Weight of the Evidence*

The Appellant first argues that the verdict rendered by the Jury was against the weight of the evidence. Specifically, he suggests that there were "substantial

12

inconsistencies, contradictions and conjecture in the Commonwealth's witnesses[] testimony regarding the identity of the perpetrator." *Id.* at ¶1.

"The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses." *Commonwealth v. Boyd*, 73 A.3d 1269, 1274 (Pa.Super. 2013)(internal citation omitted). "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000)(citing *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (1994)).

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
> *Id.* (internal citations omitted).

Additionally, "evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator." *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa.Super. 2011)(internal citations omitted).

In order for an appellate court to reverse the jury's verdict, it must determine "that the verdict is so contrary to the evidence as to 'shock one's sense of justice.'" *Commonwealth v. Brown*, 23 A.3d 544, 557 (Pa.Super. 2011). "However, the determinations of the fact finder will not be disturbed on appeal if they are supported

13

by the record." *Commonwealth v. Rodgers*, 605 A.2d 1228, 1236 (Pa.Super. 1991)(citing *Commonwealth v. Zapata*, 290 A.2d 114 (Pa. 1972)).

Viewing the evidence presented at trial, the Court has determined that the jury's verdict is not so contrary to the evidence presented that a new trial is necessary. The jury was free to evaluate the evidence presented by the Commonwealth and give what importance it wished to each fact presented. Despite the fact that many of the witnesses could not give a specific description of the person who robbed them, they were able to identify what the person was wearing and distinctive features such as eyes and/or his voice. After viewing and/or hearing the Appellant speak at trial, several victims were able to identify the Appellant as the perpetrator. In addition to the in-court identification, the jury was able to view surveillance video from many of the crime scenes and was able to determine for themselves if the perpetrator was the Appellant. Further evidence demonstrated that specific items of clothing seen on the video surveillance of several of the robberies, such as the dark hoodies with white strings, the hockey mask, and the Blackhawks knit hat, were recovered from the Appellant's residence. The Court believes that the additional evidence which was provided at trial through testimony, coupled with the in-court identifications, allows this Court to find that the Jury's verdict did not so "shock one's sense of justice" that a new trial is necessary.

*Manifestly Excessive and Harsh Sentences*

The Appellant further argues that the lengthy individual sentences imposed and the Court's decision to run those sentences consecutively rendered the sentence manifestly excessive and harsh. We disagree.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that

14

discretion." *Commonwealth v. Minott*, 577 A.2d 928, 929 (Pa.Super. 1990), citing *Commonwealth v. Fries*, 523 A.2d 1134 (Pa.Super. 1987). While sentencing courts do possess broad discretion, that discretion is not unfettered and remains subject to appellate review. *Commonwealth v. Whitman*, 880 A.2d 1250, 1252-1253 (Pa.Super. 2005), reversed on other grounds, (internal citations omitted).

To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive. *Commonwealth v. Mouzon*, 812 A.2d 617, 621 (Pa. 2002). In general, the sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant." 42 Pa.Cons.Stat. §9721(b). See *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa. 2007); see also *Whitman* at 1253, citing 42 Pa.C.S. § 9721(b)). However, these factors are in no way exclusive, and a sentencing court is entitled to consider the totality of circumstances when making its decision.

"Along with these general standards . . . the court is given more specific criteria to consider with respect to each of the alternatives. Thus, total confinement should be imposed if *the court is of the opinion* that it is necessary because of a risk that the defendant will commit another crime, because institutionalization would provide the most effective correctional treatment, or because anything less would depreciate the seriousness of the crime. Further, the court's opinion is to be guided by considering 'the nature and circumstances of the crime and the history, character and condition of the defendant.'" 42 Pa.Cons.Stat. §9725. *Commonwealth v. Tuladziecki*, 522 A.2d 17, 20 (Pa. 1987). Given the general outline of considerations provided in 42 Pa.Cons.Stat. §9721 and §9725, it is clear that the Pennsylvania legislature has vested

15

broad discretion in the trial court to fashion a sentence that is appropriate given the particular set of facts and circumstances for the individual case at bar.

Furthermore, "[w]here the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he [or she] was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors." *Commonwealth v. L.N.*, 787 A.2d 1064, 1071-72 (Pa. Super. 2001). Ultimately, "[t]he role of the sentencing judge is to weigh all mitigating and aggravating factors and arrive at an appropriate sentence." *Commonwealth v. Cottam*, 420 Pa. Super. 311, 346, 616 A.2d 988, 1006 (1992) (citations omitted).

Abuse of discretion is not shown merely by an error of judgment; an appellant must also show misapplication of the law, exercise of judgment for reasons of partiality, prejudice, bias, or a manifestly unreasonable decision. *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa. Super. 2005); *Mouzon*, 828 A.2d at 1128 (Pa. Super. 2003). In determining whether a sentence is unreasonable, an appellate court considers: 1) The nature and circumstances of the offense and the history and characteristics of the defendant; 2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation; 3) The findings upon which the sentence was based; and, 4) The guidelines promulgated by the commission. *Commonwealth v. Smith*, 543 Pa. 566, 673 A.2d 893 (1996). An appellant also carries a burden when making an excessiveness claim. To prove excessiveness, an appellant must show that the trial court's sentence was inconsistent with a specific provision of the Sentencing Code, or is contrary to the fundamental norms that underlie the sentencing process. See *Commonwealth v. Hall*, 382 Pa. Super. 6, 554 A.2d 919 (1989).

In the instant case, the Appellant argues that the lengthy individual sentences imposed consecutively were manifestly excessive and harsh because they "far exceeded any reasonable period of incarceration" and the Court failed to state its reasons for "such a gross deviation from the sentencing norms for such a case." App. Stmt. of Matters Compl. at ¶2. Prior to the date of sentencing in the instant matter, the Court received a presentence investigation report, which included the sentencing guidelines, affidavits of probable cause from all of the relevant criminal complaints, a copy of the inventory collected during the execution of the search warrant, a photograph of the weapon used during the commission of the robberies throughout the Lehigh Valley, the victim statement that was written for the police from Edna Lanier, and a request for restitution from Gurpreet Kaur. The Court also received a memorandum from the Lehigh County Jail outlining the misconducts suffered by the Appellant while he was incarcerated.

After review of the transcript of the Sentencing Hearing, it is clear that the Court carefully considered a variety of factors pertinent to the Appellant, including his past criminal history and the danger he presents to the community. Also weighing significantly on the Court's decision to impose the sentence it did were the particular facts and circumstances surrounding the twelve robberies and thefts, the terror experienced by the victims at the time the Appellant committed the crimes, and the Appellant's lack of remorse for his actions:

> ...it's a scary job to be a convenience store or a
> small store owner. You are really at the mercy of the
> neighborhood that you are in, the public that comes
> in and out, maybe the relationship that you have
> with the police department that services the area.
> But you couldn't pay me to be a convenience
> store person. . .
> And, sure enough, you are the reason why
> [working at a convenience store is dangerous]. People
> come in and in the blink of an eye it's a robbery.

17

Whether it's a fake gun, whether it's a real gun, it was dangerous and it was scary.

And, surprisingly, statistically speaking, I think it's improbable that you could have robbed all of these places without one of these victims having their own weapon.

\*\*\*

I don't give discounts for volume. I think that each and every victim here was harmed and was seriously harmed. And, again, not because they were injured -- thank God no one was -- but because they had the crap scared out of them.

I think that we have heard testimony that some people won't do this job anymore or whether their family members won't let them. For other people it's their livelihood and so they have to do it. It's how they support their families. And so I don't know how they go in and out every day but they have to. It's their store.

So, no, there's no volume discount.

Notes of Testimony,
Sept. 21, 2015, p.8-10.

It is well-settled that the Court is entitled to sentence a defendant on each criminal act committed, so long as "the crimes are not greater or lesser included offenses." See *Commonwealth v. Shank*, 883 A.2d 658, 671 (Pa.Super. 2005), citing *Commonwealth v. Anderson*, 650 A.2d 20, 22 (Pa. 1994)). "[Defendants] are liable for as many crimes as they are convicted of and may be sentenced for each such crime." *Id.* citing *Anderson*, 650 A.2d at 22. The Appellant created a crime spree throughout the Lehigh Valley, terrorizing the individual clerks working at the different businesses and the community as a whole. He employed the use of a gun, albeit a BB or pellet gun, using the weapon to threaten the victims to comply with his demands for the money, registers, and/or personal property of the victims. The crimes committed did not merge and were separate criminal acts.

Further, we note that the Appellant was sentenced within the standard range of the sentencing guidelines, albeit at the top of the standard range. The Appellant had a prior record score of 3, demonstrating that he had prior contact with the justice

18

system. To have imposed these counts concurrently would have depreciated the actions by the Appellant and not brought justice to the victims or protected the greater community from the Appellant.

## CONCLUSION

After review of the evidence presented at trial, the averments made by counsel for the Appellant in his Concise Statement of Matters Complained [of] on Appeal, and the relevant case law, we believe that the Appellant's argument that the verdict of the jury was against the weight of the evidence is without merit. In addition, the Court did not err by issuing individual sentences in each of the robberies and deciding to run the sentences consecutively. We urge the Superior Court to deny and dismiss the instant Appeal.

By the Court:

Kelly L. Banach, J.

19